**UNITED STATES of America**
**v.**
**Vincent J. CATANZARO, Appellant.**
**No. 17257.**

United States Court of Appeals
Third Circuit.

Argued Dec. 3, 1968.
Decided March 4, 1969.

Michael A. Querques, Querques, Isles & Weissbard, Orange, N. J. (Harvey Weissbard, Orange, N. J., of counsel and on the brief), for appellant.

Marlene Gross, Asst. U. S. Atty., Newark, N. J. (David M. Satz, Jr., U. S.

Atty., Newark, N. J., on the brief), for appellee.

Before HASTIE, Chief Judge, and KALODNER and VAN DUSEN, Circuit Judges.

## OPINION OF THE COURT

HASTIE, Chief Judge.

The appellant has been convicted by a jury on an information which charged that on specified occasions he caused a drug that had moved in interstate commerce to be "misbranded" while held for sale, in violation of section 331(k) of title 21, United States Code, in that he dispensed a toxic drug, amphetamine sulphate, in an unlabeled container and without a prescription contrary to the requirement of section 353(b) (1) of title 21.[1]

At the trial two inspectors employed by the United States Food and Drug Administration testified that on three different days they purchased unmarked bottles or packages of amphetamine sulphate tablets from the defendant at a motel in Secaucus, New Jersey where he was employed.

In his defense the appellant sought to show that he had been entrapped into selling the drugs without knowledge of their character. On this appeal we are urged to find reversible error both in the court's charge on entrapment and the judicially permitted use of certain hearsay evidence.

One of the inspectors who made the purchases testified that Don Maskell, an informant who had "worked hand-in-hand with the state police as well as Food & Drug in the past" had supplied information which led them to go to the motel where the appellant was employed and to offer to buy drugs from him. The inspector introduced himself as a truck driver and a friend of Maskell. This was done, according to the inspector's testimony, because "Maskell had said to him [appellant] that a friend of his was coming to buy drugs. * * *" After a considerable interrogation about the prospective buyer's identity and connections, the appellant sold the inspector for $40 an unmarked bottle containing 1000 amphetamine sulphate tablets. Later this inspector and a colleague made other similar purchases from the appellant.

The appellant's defense of entrapment was based largely upon his own testimony. He testified that Maskell was a truck driver who from time to time stayed at the motel and also had frequently borrowed money from him. At the time now in question Maskell owed him some $300. He repeatedly pressed Maskell for repayment until Maskell proposed that the appellant accept in lieu of cash some "merchandise," purchasers for which would be sent to him by Maskell. The "merchandise" was in five containers, each valued by Maskell as worth $50. Maskell characterized the contents by saying "every fat woman is taking them at one time or another" and that "this keeps you alert, and it also is a weight reducer." The appellant testified that he did not know that the contents were drugs which could not lawfully be dispensed without a prescription and that, except for the "merchandise" Maskell had pursuaded him to accept and dispense to buyers sent by Maskell, he had never sold such drugs.

It should be added that this exculpatory explanation was at odds with the testimony of the purchasing officers as to the appellant's conversation and conduct when they approached him and bought the drugs. But it also is noteworthy that the prosecution did not produce or call as a witness the one man, its informer Maskell, who knew whether the appellant's story of Maskell's role was true. It is also to be observed that the price of the "merchandise", four or five cents a tablet, was not so high as to suggest it was contraband or that the sale was illegal.

1. Section 353(b) (1) declares that such a prohibited dispensing "shall be deemed to be an act which results in the drug being misbranded while held for sale."

Thus, the appellant's story, if believed, would have justified a finding of entrapment and a consequent acquittal. For the appellant had pictured his entire handling and dispensing of drugs as a scheme arranged and implemented, with the assistance of public officers, by an informant, who admittedly "worked hand-in-hand" with the authorities on this and various other occasions, ostensibly as a way of satisfying a debt owed by the informant but actually as an artifice for entrapping the appellant into unwitting criminal conduct.

In these circumstances it was all important to the prosecution's rebuttal that predisposition and willingness to make illegal sales of drugs be shown. The challenged hearsay evidence related to this issue. As part of its rebuttal, the prosecution was permitted to introduce testimony of one of the purchasing officers that he and his colleague went to the motel and asked the appellant to sell them drugs because the informant had called them and said that the appellant was "dancing around the motel", apparently "under the influence of bennies", and "that he would sell [drugs] to anyone approaching him."

The prosecutor told the court that this testimony of the officer as to what the absent Maskell had told "was offered solely on the point of whether there was probable cause to go in". And the court so instructed the jury. However, the court also instructed the jury as follows:

"When, for example, the Government has reasonable grounds to believe that a person is engaged in the illicit sale of drugs, such as those in question, it is not an unlawful entrapment for a Government agent to pretend to be someone else and to offer either directly, or through an informer or other decoy, to purchase the illegal products from such suspected person."

\* \* \* \* \* \*

"But, as I said to you before, there can be no entrapment if the accused was already disposed to do such wrongdoing, and that he was following a course of conduct which preceded, as alleged by the Government, the sale to the Government agents. For it is well-settled that where a person is reliably reported to be violating a law or when the circumstances show that it is likely he will so violate the law, Government agents may provide an opportunity for the Government to make a sale, he does commit a crime, and that standing alone is not entrapment."

The quoted sentences invited the jury to attach substantial significance to a finding that Government agents had reasonable cause to suspect that the accused had been engaging in the illicit sale of drugs. Indeed, the first sentence, while technically correct, may well have suggested that such reasonable suspicion would in itself justify a finding of no entrapment. The second sentence indicated that there could be no entrapment if the defendant "was following a course of conduct which preceded, as alleged by the Government, the sale to Government agents." And the third sentence linked such predisposition with a situation "where a person is reliably reported to be violating the law." Yet, except for an inference from behavior at the time of sale, the only evidence that the appellant had previously been "following a course of conduct" indicative of predisposition to sell drugs was the testimony of one of the inspectors as to what Maskell had told him.[2] Thus, the charge that prior course of conduct was a proper means of establishing predisposition to negative entrapment may well have suggested to the jury that it could use the hearsay evidence of Maskell's statement as proof of predisposition. At least we

2. The officers' testimony of what the appellant did when they sought to buy drugs from him was highly relevant on this issue. Cf. United States v. Johnson, 3d Cir. 1967, 371 F.2d 800. How-

ever, the quoted charge about "course of conduct" points only to the hearsay evidence of what Maskell had said, not to any other competent evidence from which predisposition might be inferred.

think the contrast between this part of the charge and the earlier admonition as to the limited purpose for which the hearsay evidence of Maskell's statement was being admitted was likely to confuse the jury. Indeed, we think the entire matter of the significance and use of evidence of probable cause was presented to the jurors in such a way that they may well have been misled to the prejudice of the accused.

This brings us to the legal question whether, when entrapment is in issue, testimony reciting a statement of an absent person which in fact indicates that the accused was predisposed to criminal behavior should be admitted even for the stated limited purpose of showing that the officers were justified in or had probable cause for providing the accused with an opportunity to commit the crime in question.

 We hold that such evidence is inadmissible. The basic question in an alleged entrapment case is whether the accused was ready and willing to commit the crime if an opportunity should be presented, or whether a person not otherwise disposed to wrongdoing was corrupted by some overreaching or special inducement, often amounting to reprehensible conduct,[3] by public officers or those acting in concert with them. Proof that the agents of government did no more than provide the wrongdoer with an opportunity for criminal conduct would suffice to negative entrapment. No signficant purpose would be served by a further showing of their reason for approaching him.[4] If, for example, an undercover agent spread the word in the community that he was a "fence" willing to buy stolen articles, we cannot see that entrapment would result from the fact that a person who responded to the news by offering to sell the agent stolen goods was one whom the agent had not suspected. The decisive issue in that case, as in any other, would be whether one not disposed to criminal misconduct had been corrupted by those acting for the government, and decision on that question would not be aided by a showing that the government agent did or did not act on well-grounded suspicion that a particular person was engaging in wrongdoing.

Accordingly, when such evidence is inadmissible hearsay on the critical issue of predisposition, it may not be admitted into evidence because of its relevance on the inconsequential issue of probable cause.

 For these reasons we think the ends of justice will best be served by requiring a new trial at which hearsay evidence of what the informer told the government agents shall be excluded.[5] We add the observation that, in the light of the defense offered at the first trial, it would be most appropriate that the government make every reasonable effort to have the informer present and available as a witness when the case is tried again.

The judgment will be reversed and the cause remanded for a new trial or other procedure consistent with this opinion.

---

3. Whether the reprehensible character of the methods employed by public officials may ever give even a corrupt person already disposed to criminal behavior a defense of the entrapment type, we need not and do not consider.

4. Whiting v. United States, 1st Cir. 1963, 321 F.2d 72, *cert. denied*, 375 U.S. 884, 84 S.Ct. 158, 11 L.Ed.2d 114; United States v. Abdallah, 2d Cir. 1945, 149 F.

2d 219, 222 n. 1, *cert. denied* 326 U.S. 724, 66 S.Ct. 29, 90 L.Ed. 429.

5. Although counsel for the *defendant did* not make proper objections to the admission of the hearsay evidence of probable cause or to the charge on the signficance of probable cause, we view the introduction and explanation of this extraneous matter as sufficiently prejudicial and confusing to require a new trial.