**UNITED STATES of America**

v.

**James L. TYSON, Appellant.**

**No. 71-1672.**

United States Court of Appeals, District of Columbia Circuit.

Sept. 28, 1972.

Certiorari Denied March 19, 1973.

See 93 S.Ct. 1512.

---

Mr. Daniel Reiss, Jr., Washington, D. C. (appointed by this court), was on the brief for appellant.

Messrs. Harold H. Titus, Jr., U. S. Atty., and John A. Terry, William S. Block, and James F. McMullin, Asst. U. S. Attys., were on the brief for appellee.

Before McGOWAN, LEVENTHAL and MacKINNON, Circuit Judges.

PER CURIAM:

Appellant Tyson was convicted of transferring 13,115 milligrams of marijuana in violation of 26 U.S.C. § 4742(a) [1] and with unlawfully possessing and having under his control the same quantity of marijuana in violation

1. 26 U.S.C. § 4742(a) provided, at the time of Tyson's offense:

It shall be unlawful for any person, whether or not required to pay a special tax and register under sections 4751 to 4753, inclusive, to transfer marihuana, except in pursuance of a written order of the person to whom such marihuana is transferred, on a form to be issued in blank for that purpose by the Secretary or his delegate.

of D.C.Code § 33-402.[2] The charges arose out of Tyson's delivery of a quantity of marijuana (cannabis) to two police officers (at the officers' request) who had been introduced to Tyson by one "George," who claimed to be a friend of Tyson's. On this appeal Tyson claims (1) entrapment and that he was a mere conduit, (2) the improper admission of prior convictions, and (3) the improper admission of a carbon copy of Officer Sheridan's daily report. We affirm.

## I

At trial the defense of entrapment was fully presented by Tyson's counsel. The Government responded with ample evidence of predisposition to commit the offenses. This evidence of predisposition included the statement of "George" that Tyson "could probably get us some or probably had some"[3]; that "George" had Tyson's confidence; that when the officers entered Tyson's apartment a "roach clip" such as is used in smoking marijuana cigarettes was observed in an ash tray; that Tyson responded favorably and quickly when he was informed the officers wanted to buy marijuana and indicated he would supply the officers with heroin or marijuana if they used it in Tyson's presence; and that Tyson had been convicted in the United States District Court for the District of Columbia in 1969 of possessing heroin. There was no evidence that Tyson at any time indicated he was unwilling to commit the offenses with which he was charged.[4] Under such circumstances, as Judge Aldrich said in

Whiting v. United States, 321 F.2d 72, 76 (1st Cir.), cert. denied, 375 U.S. 884, 84 S.Ct. 158, 11 L.Ed.2d 114 (1963):

> When . . . a person whose only credentials were the alleged mutual acquaintances, disclosed an interest in making a purchase, it could hardly be said that the defendant's immediate response was indicative of a weak will converted by government temptation. At best, this was a question of fact for the jury.

More recently the same sentiments were expressed in United States v. Barcella, 432 F.2d 570, 572 (1st Cir. 1970):

> [I]t may be observed that assertion of the procuring agent theory as a defense frequently goes hand in hand with a claim of entrapment. . . . This is not mere coincidence. Evidence of entrapment will often also be evidence that the defendant entered into the illegal transaction solely to help the buyer, and on his behalf. By the same token, a jury might rationally consider that a defendant who was ready, able and willing to enter the transaction without improper inducements amounting to entrapment was a seller, or an associate or agent of a seller, however much he might maintain that he was only accommodating the buyer. Such matters must be left to a jury's good judgment.

The trial judge here did leave to the jury the issues of entrapment and whether Tyson acted as a mere conduit "in the prospective purchaser's behalf rather than his own."[5] The jury decided the

2. D.C.Code § 33-402 (1967) provides:
   § 33-402. Acts declared unlawful.
   (a) It shall be unlawful for any person to manufacture, possess, have under his control, sell, prescribe, administer, dispense, or compound any narcotic drug, except as authorized in this chapter.
   D.C.Code § 33-401(n) provides: "'Narcotic drugs' means . . . cannabis . . . ."

3. This was sufficient to give the officers a reasonable suspicion that Tyson was already engaged in such conduct, and rea-

sonable suspicion is all that is required to establish predisposition sufficiently to defeat a claim of entrapment. Childs v. United States, 105 U.S.App.D.C. 342, 343, 267 F.2d 619, 620 (1958), cert. denied, 359 U.S. 948, 79 S.Ct. 730, 3 L.Ed. 2d 680 (1959).

4. United States v. Sizer, 292 F.2d 596, 599 (4th Cir. 1961).

5. The court's instruction on the latter point provided:
   You are further instructed that if you believe that Officer Sheridan or someone acting under instructions and

issue against appellant and we find that verdict to be amply supported by the evidence. In so deciding we also necessarily conclude that entrapment was not proved as a matter of law.[6]

## II

■ Appellant's second point on appeal attacks the admission into evidence of his prior conviction in the same court in 1969 for possessing heroin. He bases this objection upon the contention that, "Apparently, the Court made this ruling under color of the revision of 14 D.C. Code § 305 pursuant to the District of Columbia Court Reform and Criminal Procedure Act of 1970 (P.L. 91-358; 84 Stat. 473)." He argues that the amended § 14-305 is unconstitutional, and therefore that the admission of this evidence pursuant to the statute was reversible error. But the new § 14-305 operates only to admit proffered evidence of convictions "for the purpose of attacking the credibility of a witness." D.C.Code § 14-305 (Supp. IV, 1971). If this evidence was admissible on any other ground it was properly within the discretion of the trial judge to admit it on such ground regardless of the constitutionality of the amended statute.[7]

■ To confine this evidence to impeachment of Tyson would seriously restrict its permissible evidentiary value. It was admissible as substantive evidence of Tyson's predisposition to commit the offense, thereby rebutting his entrapment defense. Most of our law on the entrapment defense derives from the Supreme Court's decisions in Sherman v. United States, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958), and Sorrells v. United States, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413 (1932). Examining these two cases with regard to the question of the admissibility of prior convictions to prove predisposition, this court sitting *en banc* in Hansford v. United States, 112 U.S.App.D.C. 359, 365, 303 F.2d 219, 225 (1962), found:

> The separate concurring opinions in the Supreme Court, in both Sorrells and Sherman, have stated that there is such danger to the fairness of a trial in admitting evidence of a previous offense that the inquiry [into defendant's predisposition to commit the offense charged] should be limited to the circumstances immediately surrounding the offense which is the subject of the trial. *The majority opinions, which bind us, do not so limit the inquiry.* (Emphasis added.)

Though the Court held in *Sherman* that 5 and 9 year old prior convictions were insufficient to establish predisposition (where defendant had demonstrated efforts to overcome his narcotics habit in the interim), the majority opinion did not question the admissibility of these convictions into evidence. In the present case we are not even confronted with this problem of "staleness," since the challenged conviction occurred only 11 months prior to the date of the offense charged.

■ Furthermore, this evidence was clearly admissible even under the discretionary standard of Luck v. United States[8] in effect prior to the 1970

---

authority of Officer Sheridan asked Mr. Tyson to get some marijuana for him and thereafter Mr. Tyson undertook to act in the prospective purchaser's behalf rather than in his own, and in so doing purchased the drug from a third person with whom it has not been shown, he was associated in selling, and thereafter delivered it to the buyer, Mr. Tyson would not be a seller or transferor and cannot be convicted under count 1.

6. *Cf.* United States v. Barcella, 432 F.2d 570, 572 (1st Cir. 1970): "Rarely could it be ruled as matter of law that a go-between was acting solely as a procuring agent."

7. 1 Wigmore, Evidence § 13 (3d ed. 1940); McCormick, Handbook on the Law of Evidence § 59 (1954).

8. 121 U.S.App.D.C. 151, 348 F.2d 763 (1965). Significantly, even under *Luck* a single narcotics conviction has been held admissible for the *sole* ground of impeachment. United States v. McIntosh, 138 U.S.App.D.C. 237, 426 F.2d 1231 (1970).

amendment to § 14–305. The issue of Tyson's prior involvement with narcotics was raised by him in his direct testimony. The Government's introduction of the evidence of his prior conviction directly followed his attempt to convey to the jury an impression of innocence of prior narcotics trafficking. The transcript of the closing question on direct examination and the opening of cross-examination reads as follows:

Q Have you ever sold heroin?

A No.

MRS. ROTHENBERG: I have nothing further at this point.

CROSS–EXAMINATION

BY MR. BLOCK:

Q But you have been convicted of possessing heroin in 1969, were you not?

A Yes, sir.

Q That was in the United States District Court for the District of Columbia, before Judge Bryant?

A Yes, sir.

Tr. 119–20. Moreover, on redirect examination, Tyson further testified:

Q You testified that you pled guilty to possession of heroin, is that right?

A Yes.

Q Were you an addict at the time?

A I can't say I was an addict. I didn't have no withdrawals or nothing. I used it two or three times in a period of three weeks. That was the only time.

Tr. 131. Thus defense counsel not only brought out the same testimony the Government had elicited, but went further and introduced even stronger evidence of Tyson's involvement with narcotics in the recent past. Significantly, no objec-

tion was made to the introduction of the prior conviction. It seems beyond question to us that defendant's direct testimony had raised an innuendo of innocence that was clearly belied by his past record. Evidence of his prior conviction of a closely related offense was thus highly relevant, and its introduction at this point to challenge the inference Tyson sought to suggest was necessary to avoid undue prejudice to the Government's case. Such evidence, under these circumstances, would have been admissible without the 1970 amendment to § 14–305.

Since the testimony concerning Tyson's prior conviction was not objected to, and since we find two bases for its introduction wholly independent of the 1970 amendments, we need not reach appellant's contention as to the constitutionality of D.C.Code § 14–305.

### III

■ During cross examination of Officer Sheridan, defense counsel elicited the fact that part of Government's Exhibit No. 1 (denominated Bureau of Narcotics and Drugs Form B & D8) was a summary of a daily report prepared by him (Tr. 59–60). Defense counsel requested a copy of the daily report in accordance with the provisions of the Jencks Act (18 U.S.C. § 3500) and the court ordered its production. The Government was unable to produce the original report as directed but did produce carbon copies.[9] Appellant contends that this was a violation of the Jencks Act [10] and the best evidence rule. Even if such report were covered by the Jencks Act there is nothing in that Act that prohibits the use of duplicate originals such as the carbon copies which were produced here. Moreover, it is familiar law that the best evidence rule permits the use of secondary evidence (if a du-

9. An original and possibly two carbon copies were stated to have been prepared (Tr. 89–90).

10. The Jencks Act, 18 U.S.C. § 3500 (71 Stat. 595, 84 Stat. 926) requires the Government, after a Government witness has

testified on direct examination and on motion of the defendant, to produce any statement of the witness in the possession of the Government which relates to the subject matter as to which the witness has testified.

plicate original is secondary evidence) when the "best" evidence cannot be found. The record here reflects an unavailing good faith search for the original (Tr. 88–92). Under such circumstances the carbons were properly admitted. The defense contentions at trial and on this appeal with respect to the original report indicate no error.[11]

Affirmed.

11. Defense counsel evidenced extreme interest in the officer's original report because the carbons referred to his associate in the dealings with Tyson as "my partner"—a description that had been used during the trial because his "partner" had since been killed and there was an agreement not to refer to him by name. Defense counsel in this setting questioned the authenticity of the carbons, suggesting that because the report used the same terminology agreed upon *at trial* that possibly the carbon report had not been prepared until after the trial began. However, the officer who prepared the report in sworn testimony both at the preliminary hearing and before the grand jury had used "my partner" and the officer's name interchangeably. Also, one of the carbons of the report that was produced had stapled to it additional police documents which were contemporaneous with the date of the report (Tr. 150). Defense counsel admitted there were no differences in the two carbon copies (Tr. 152), one of which the officer produced and one of which was produced from Police Department files.