135 N.J. Super. 500 (1975)
343 A.2d 777
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JOHN TALBOT, III, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued June 3, 1975.
Decided July 24, 1975.
*502 Before Judges KOLOVSKY, LYNCH and ALLCORN.
Mr. Martin Newmark argued the cause for appellant (Messrs. Newmark & Newmark, attorneys).
*503 Mr. Mart Vaarsi, Deputy Attorney General, argued the cause for respondent (Mr. William F. Hyland, Attorney General, attorney).
The opinion of the court was delivered by ALLCORN, J.A.D.
Defendant appeals his conviction for the offense of unlawful distribution of heroin, entered upon a jury verdict.
The making of the sale of heroin to an undercover State Police officer on February 19, 1973 is not denied by defendant. Rather, he contends that the sale was the result of entrapment by the police and their informant; that not only did the police informant induce the unwilling defendant to make the sale, but that the heroin defendant sold to the police had been supplied to defendant by the informant a few days earlier for the express purpose of entrapping defendant into making the sale (albeit unknown to the police); and that since such evidence was uncontroverted and inasmuch as the State presented no "proper proof" of defendant's predisposition to sell narcotics, defendant had established entrapment as a matter of law and, consequently, the trial court erred in denying defendant's motion for acquittal made at the close of the entire case.
It is undisputed that on February 14, 1973 Anthony Federici was arrested by the Wayne police on a narcotics charge. Federici having previously aided the Wayne police, Sergeant Weinmann sought to recruit Federici again as an informant in assisting the police to search out and to obtain evidence against persons known by Federici to be dealers in or distributors of narcotics. In return, Sergeant Weinmann undertook to inform the judge of Federici's cooperation when he appeared for sentencing on the charge for which he had been arrested. Federici agreed and mentioned the names of several persons to Sergeant Weinmann, including that of defendant.
Thereafter, on February 19, 1973, Federici, Weinmann and State Police Detective Dalio met with Trooper Jack Cole, *504 an undercover officer of the State Police, following which Cole and Federici proceeded to defendant's home in Smoke Rise, Kinnelon, in an unmarked police car. There they met defendant at or near a corral on the premises and, together, went into a barn or shed in or adjacent to the corral, where the sale of the heroin from the defendant to Trooper Cole took place, in the presence of Federici.
Federici, who did not testify for the State, was called as a witness by defendant. He testified on direct examination that following his arrest and his accommodation with Sergeant Weinmann on February 14, he sold "narcotics to John Talbot" sometime "between February 14 and February 19," "with the intention of arranging for a sale back to the police." On cross-examination Federici was unable to fix the date of his sale to defendant any closer than "February 17 or 18"; he could not recall where the sale took place; he could not recall the quantity sold, and he could not state with any certainty the amount paid to him by the defendant  in contrast to his complete recollection of the place, quantity, price and the details of the conversations on the occasion of the sale from defendant to the undercover trooper on February 19, only a day or two after Federici's purported sale to defendant.
It was Federici's further testimony that defendant's name as a distributor was first suggested by him, not by the police; that the plan to sell heroin to defendant and to induce him in turn to sell some of it to the police was "completely [his] own idea," and "[n]o police officer ever suggested" such procedure to him. Significantly, Federici at no time testified that he informed any of the police officers concerned with this case of his plan prior to the sale to defendant or, subsequent thereto, of the fact or purpose of the sale by him to defendant. All of the police officers denied any knowledge and flatly rejected any such means as improper law enforcement procedure.
Defendant, who was 21 at the time of the trial in April 1974, testified on direct examination that he had been a user *505 of heroin and marijuana for sometime prior to November 1972, when he stopped (Federici testified he had last sold heroin to defendant in December 1972 or January 1973, immediately prior to the February 1973 sale); that he previously had pleaded guilty to and been convicted of: breaking and entering in New Jersey in 1971; possession of eight ounces of marijuana and a quantity of barbiturates in New York, the offense having been committed in September 1972; possession of cocaine, barbiturates and seconal, possession of a hypodermic syringe and needle, and delivery of a barbiturate to a high school girl by injecting her with cocaine, committed in Rhode Island, in March, 1972.
Defendant also testified that Federici had telephoned him approximately February 17 or 18 and offered to sell him some heroin, which he refused; that Federici telephoned again the next day and, because Federici said he needed money and because defendant's resolve weakened, he agreed to buy a "$30.00 piece"  even though that was all the money he had; that thereafter Federici drove to defendant's home, where the transaction was consummated; that the following day Federici telephoned and said he wanted some heroin for a friend of his brother, just arrived "from out west," but defendant declined to sell; that when, on the succeeding day (February 19), Federici telephoned again, defendant agreed to sell the balance of the heroin to Federici (defendant in the meantime having "snorted" some of it himself), because he "still didn't really want to get involved [in shooting]," and so "decided I would get rid of it." It is on the basis of this testimony of defendant and Federici that defendant claims that entrapment was established as a matter of law.
The defense of entrapment is grounded upon the proposition that the "function of law enforcement is the prevention of crime and the apprehension of criminals," and "that function does not include the manufacturing of crime." Sherman v. United States, 356 U.S. 369, 372, 78 S.Ct. 819, 820, 2 L.Ed.2d 848 (1958). It "reflects a policy that the powers *506 of government should not be used to entice otherwise innocent persons into the commission of crimes which they would not commit on their own." State v. Dolce, 41 N.J. 422, 432 (1964).
The test enunciated by Dolce is that entrapment exists "when the criminal design originates with the police officials, and they implant in the mind of an innocent person the disposition to commit the offense and they induce its commission in order that they may prosecute.... It occurs only when the criminal conduct was the product of the creative activity of law enforcement officials." 41 N.J. at 430. In the application of this test the determinative factors are: (1) whether there was any inducement to commit the offense by the law enforcement officers and, if so, (2) whether there was any predisposition to commit the offense on the part of defendant. See, Annotation, "Modern Status of the Law Concerning Entrapment to Commit Narcotics Offense  Federal Cases," 22 A.L.R. Fed. 731, 737-738 (1975); Annotation, "Modern Status of the Law Concerning Entrapment to Commit Narcotics Offense  State Cases," 62 A.L.R.3d 110, 113-116 (1975).
Otherwise stated, if the criminal intent originates with the law enforcement representatives and defendant is by them induced to commit the offense in order to prosecute him, defendant may not be convicted. On the other hand, if the criminal intent originates with defendant (i.e., he was predisposed) and the law enforcement representatives simply afford defendant the opportunity to commit the offense, there has been no entrapment.
In the present case the entrapment defense has two facets: (1) a law enforcement representative in the person of the government informant supplied and sold heroin to the defendant with the intent that he sell some part or all of it to the undercover police officer, and (2) the government informant induced defendant, who was reluctant and not so predisposed, to sell the same heroin to the undercover police officer. It is the position of defendant that, inasmuch as the *507 testimony of himself and Federici that the latter had furnished the heroin to defendant to sell to the undercover agent was "so uncontradicted" and the State's proof of defendant's predisposition "so insufficient," entrapment had been established as a matter of law.
It is true that a number of cases have held that where the evidence is undisputed that an agent of the government furnished narcotics to an individual so that he may sell them to another government agent, and where there is no question of the credibility of the witnesses or their testimony, entrapment is established as a matter of law.[1]United States v. Bueno, 447 F.2d 903 (5 Cir.1971), cert. den. 411 U.S. 949, 93 S.Ct. 1931, 36 L.Ed.2d 411 (1973). Annotations, supra, 22 A.L.R. Fed. at 748-750 and 62 A.L.R.3d at 141-145; see Sherman v. United States, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958); compare United States v. Russell, 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973). This rule has no application here, however, in view of the questionable credibility of the testimony of both defendant and the informant.
A mere reading of the testimony of defendant and of the informant on direct and cross-examination is alone sufficient to raise doubts as to the credibility of that testimony. The obvious self-interest of defendant, combined with the relationship between the two  defendant at the trial describing Federici as "a good friend of mine for many years"  further affect the believability of the testimony, particularly when it is observed that defendant and his "good friend," the informant, were the only persons who would have any knowledge as to whether the informant in fact supplied defendant with heroin at the date asserted and whether the heroin sold by defendant to the undercover trooper in fact was the same *508 as that allegedly supplied by the informant. As so aptly stated, "Where men of reason and fairness may entertain differing views as to the truth of testimony, whether it be uncontradicted, uncontroverted or even undisputed, evidence of such a character is for the jury." Ferdinand v. Agricultural Ins. Co. of Watertown, N.Y., 22 N.J. 482, 494 (1956).
Moreover, the testimony of defendant and the informant was not undisputed, uncontroverted or uncontradicted. Defendant himself, on his direct testimony, conceded that he had been a user of heroin and other drugs for some time, at least up to November 1972, while the informant admitted selling heroin to defendant for a substantial period, the last sale (before February 1973) having taken place in December 1972 or January 1973. Defendant further admitted driving Federici to New York on prior occasions so that Federici could purchase heroin. And Federici testified to having named defendant as a dealer or distributor of narcotics during his discussions with the Wayne police after having reached his accommodation with them. It was also conceded by defendant that he had pleaded guilty in New York to the possession of eight ounces of marijuana in September 1971, estimated by Trooper Cole to be enough to make 600 cigarettes and that he pleaded guilty in Rhode Island to delivering (injecting) a barbiturate to the high school girl in March 1972.
Too, there is the testimony of Trooper Cole that, on the occasion of the sale by defendant to Cole, defendant stated that he could supply Cole with "ounces of heroin", and that during a conversation with the informant the latter told Cole that defendant had a supplier in the Hamburg area of Sussex County and "was capable of dealing in ounces" of heroin.
All of the foregoing controverted and affected the credibility of the testimony of defendant and Federici. In sum, we conclude that the question of entrapment (whether *509 the State had proved beyond a reasonable doubt that defendant had not been entrapped) was clearly an issue for determination by the jury.
Defendant next attacks the conviction by a number of challenges to the charge to the jury. We discern merit in only one: the instruction to the jury which charged, in effect, that there could be no entrapment unless Federici, in furnishing the heroin to defendant for sale to Cole, "was acting with the consent of the police and as their agent". In so charging the trial judge effectively insulated the State against having to prove that there was no entrapment, whatever the evidence as to the nature and degree of the creative activity engaged in by the informant employed by the police which otherwise might constitute entrapment, if the jury was satisfied that the police had no prior knowledge and did not give prior consent to the creative activity of the informant.
The hypothesis is offensive to fundamental principles of the administration of justice. To induce an individual to commit a crime and to furnish him with the means and the opportunity to do so in order to prosecute him, is incompatible with the legitimate function and proper ends of law enforcement. The manufacture of crime, whether by the police or by an informant employed by the police, cannot be countenanced. However desirable and helpful the employment of an informant may be in the pursuit and discovery of criminal activity and evidence of crime, law enforcement authorities may not disavow him and disclaim responsibility for his actions when he entraps someone because they had no knowledge and did not approve of the entrapment. In short, "[g]overnment cannot make such use of an informer and then claim disassociation through ignorance." Sherman v. United States, 356 U.S. 369, 375, 78 S.Ct. 819, 822, 2 L.Ed.2d 848 (1958); State v. Scrotsky, 39 N.J. 410 (1963).
*510 As a consequence of the incorrect exposition to the jury of the law in this regard and the resultant manifest prejudice to the defendant, the conviction must be reversed and the cause remanded for a new trial. Inasmuch as some of the additional issues raised on this appeal may well arise at the retrial, we will take the opportunity of passing on them for the benefit of the parties and the court.
We find no error in the rulings of the trial court in admitting the rebuttal testimony of Trooper Cole concerning the remarks of Federici to him to the effect that defendant was capable of dealing in ounces of heroin, or in declining to allow defendant to show that his New York conviction was on appeal. Neither the hearsay nature of the Federici statement nor the fact that it was made subsequent to the sale here in question bars its admission on the issue of predisposition. Annotation, "Admissibility of Evidence of Other Offenses in Rebuttal of Defense of Entrapment," 61 A.L.R.3d 293, §§ 7[a], [c]; Evid. R. 55; see State v. Wright, 66 N.J. 466 (1975), rev'g 132 N.J. Super. 130 (App. Div. 1974). In any event, the testimony was also properly admissible as a prior inconsistent statement for the purpose of impeaching the credibility of Federici under Evid. R. 20. In view of Cole's previous testimony that defendant had made the same claim to him, there was no prejudice in the refusal of the judge to give a limiting charge.
So far as concerns the New York conviction, the fact that defendant had there been convicted of "possession of narcotics" was initially brought to the attention of the judge and jury at the outset of the direct examination of defendant by his counsel. When, during cross-examination, the prosecutor adduced the details  that defendant had pleaded guilty to the possession of eight ounces of marijuana and a barbiturate in his automobile  defendant asserted that in spite of his guilty plea, he was in fact innocent since he had no knowledge that the narcotics were *511 in his automobile. At this juncture the State offered a certified copy of the New York conviction record, which was admitted into evidence without objection by defendant.
On redirect, counsel adduced from defendant that the New York conviction "is * * * before the Appellate Court of New York", and that "the determination of the trial court [denying a suppression motion] recently [has] been reversed and remanded for a new hearing." The prosecutor's motion to strike the testimony was granted inasmuch as it did not constitute the best evidence of such matters. Following the close of the testimony of defendant, counsel offered into evidence an uncertified copy of an opinion of the Appellate Division of the Supreme Court of New York reversing the order of the trial court denying a motion to suppress the evidence, and remanding the motion for a new hearing. The opinion was ruled inadmissible principally because of the absence of any foundation concerning this type of procedure under New York law and practice.
At the outset it should be noted that the appeal and reversal of the order denying suppression should have been developed by counsel for defendant simultaneously with the disclosure of the conviction. The withholding of this fact for subsequent disclosure hardly accords with the fairness and candor to the court and counsel, which is the obligation of every attorney.
Be this as it may, evidence as to the plea of guilty made by the defendant to the charge of illegal possession of narcotics was admissible on the issue of predisposition, without regard to whether the conviction was or was not reversed. The significant circumstance was the express acknowledgement by defendant of the knowing possession of narcotics evidenced by his plea of guilt to the charge  whatever the rule with regard to the effect of the pendency of an appeal of a conviction offered or received for the purpose of impeachment of credibility. Evid. R. 55 (Comment, § 55-3); Annotation, supra, 61 A.L.R.3d 293, *512 §§ 6, 7. At most, defendant was entitled to testify as to his lack of knowledge and his innocence as well as the factors motivating his plea, which he did. Parenthetically we observe that defendant made no objection to the introduction into evidence of the certified conviction record.
In any event, as noted by the State and not controverted by defendant, the New York conviction ultimately was affirmed by the Appellate Division of the Supreme Court of New York. Thus, even upon the exceedingly dubious assumption that the trial judge erred in permitting the evidence of the conviction to stand and in refusing to admit evidence of the reversal and remand of the order denying suppression, defendant patently suffered no prejudice whatever as a result. Compare State v. Blue, 129 N.J. Super. 8 (App. Div. 1974), certif. den. 66 N.J. 328 (1974).
We find no abuse of discretion by the trial judge in granting an exception to the sequestration order so as to permit Trooper Cole to remain in the courtroom during presentation of the case for defendant, following completion of the State's direct case, in order to assist the prosecutor. State v. Hines, 109 N.J. Super. 298 (App. Div. 1970), certif. den. 56 N.J. 248 (1970), cert. den. 400 U.S. 867, 91 S.Ct. 108, 27 L.Ed.2d 106 (1970). Similarly, the judge properly exercised his discretion in declining to address to the prospective jurors on voir dire a question concerning their willingness to follow the law with respect to entrapment. State v. Manley, 54 N.J. 259 (1969); State v. Kelly, 118 N.J. Super. 38 (App. Div. 1972), certif. den. 60 N.J. 350 (1972); United States v. Crawford, 444 F. 2d 1404 (10 Cir.1971), cert. den. 404 U.S. 855, 92 S.Ct. 98, 30 L.Ed.2d 95 (1971).
Our review of the remaining contentions satisfies us that they are completely without merit.
Accordingly, the judgment of conviction is reversed and the cause is remanded to the Law Division for a new trial.
NOTES
[1] This, quite logically, without regard to the existence or nonexistence of predisposition. See United States v. Russell, 411 U.S. 423, 427, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973). Compare State v. Redinger, 64 N.J. 41, 50 (1973).