# JAMES ANTHONY BOWSER *v.* STATE OF MARYLAND

[No. 132, September Term, 1981.]

*Decided December 28, 1981.*

The cause was argued before GILBERT, C. J., and MOYLAN and BISHOP, JJ., and HOWARD S. CHASANOW, Associate Judge of the Seventh Judicial Circuit, specially assigned.

*John W. Sause, Jr., District Public Defender,* for appellant.

*Diane G. Goldsmith, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General, Sidney S. Campen, Jr., State's Attorney for Talbot County,* and *Jane Tolar O'Connor, Assistant State's Attorney for Talbot County,* on the brief, for appellee.

CHASANOW, J., delivered the opinion of the Court. BISHOP, J., concurs and files a concurring opinion at page 380 *infra.*

James Anthony Bowser, the appellant, was convicted by a jury in the Circuit Court for Talbot County of two counts of distribution of marijuana, as well as lesser included offenses. The charges arose from appellant's participation in two sales of marijuana to a police informant, whom we shall refer to as David (recognizing the preference for anonymity among police informants). The sales in question took place on January 23, 1980, and February 5, 1980.

Sometime prior to January 23, 1980, David had been observed selling drugs and had been arrested by Deputy Sheriff Kenneth Bailey of the Talbot County Sheriff's Department. In order to secure favorable sentencing recommendations, David agreed to assist Deputy Bailey in his investigation of drug dealers in Talbot County and also to participate in a series of police monitored drug purchases.

One of the targets of Deputy Bailey's investigation was one Tommy Andrews. At the urging of Deputy Bailey, David approached Tommy Andrews for the purpose of purchasing marijuana. David was told that Andrews would not sell to him directly but that the purchase could be made through a mutual acquaintance, James Bowser, the appellant.

On January 23, 1980, David approached appellant and asked him if he could get some marijuana from Andrews. Appellant replied that he "would check." Later that same day, David again approached appellant and was told that appellant had not yet contacted Andrews. David then contacted appellant for the third time and arrangements were made for a purchase that same evening. David reported to Deputy Bailey and that night two deputies followed David to his meeting with appellant and watched while David handed appellant $45. David and appellant were then observed going to a parked automobile occupied by Tommy Andrews. Something changed hands between Andrews and appellant, after which appellant handed David a plastic baggy, which contained approximately one ounce of marijuana. During the next two weeks, David had three to six additional contacts with appellant, each time inquiring about further purchases. Finally on February 5, 1980, by prearrangement, David was again followed by sheriff's deputies and was again observed meeting with appellant. The two were then followed to a parked car occupied by Tommy Andrews and again there was an exchange observed between David, appellant, and Andrews; in return for $45, appellant gave David a plastic baggy containing approximately one ounce of marijuana. Following this second sale, David tried to buy substantially larger quantities of marijuana from appellant but was refused.

Warrants were obtained for the arrest of appellant and Tommy Andrews.[1] Following his arrest, appellant gave a full confession to his part in both sales. He stated that he turned over all the money to Andrews and kept none of the proceeds for himself.

---

1. At the time of the appellant's trial, Andrews had pled guilty to his part in the instant transactions.

When appellant's case came to trial, defense counsel conceded in an opening statement to the jury that, "There is absolutely no dispute but that the sales did take place." He contended that the sole issue in the case was entrapment. The State called David as a witness and he testified to his contacts with the defendant and to his two purchases of marijuana. During cross-examination, it was brought out that appellant was not one of the identified targets of the police investigation and that prior to his conversation with Andrews, David had no reason to believe that appellant was trafficking in drugs. As its last witness, the State recalled Deputy Bailey, who had previously testified to his observations of the drug transactions.[2] Deputy Bailey was asked the following question:

"During the course of your investigations . . . say from July of . . . '78 — had you received any information that would indicate that James Bowser was trafficking in drugs at that time?"

Defense counsel objected. The court overruled the defense counsel's objection and allowed Deputy Bailey to answer:

"A.  Yes, sir, your Honor, I would say that through investigation I know that Mr. Bowser has been selling drugs since 1978.

Q.  And is that in Talbot County?

A.  Talbot County.

Q.  What kinds of drugs, if you know, did your investigations lead to?

A.  Marijuana.

Q.  Why wasn't he arrested for any of those charges?

A.  We were unsuccessful to catch Mr. Bowser."

Defense counsel then renewed his objection and made a motion to strike the quoted testimony. Both were overruled. On cross-examination, Deputy Bailey implied that his infor-

---

2. The transcript of this portion of the trial is set out in Appendix A.

mation was obtained from one or more informants, whose identities Deputy Bailey would not, or could not reveal.[3]

Appellant took the stand in his own behalf and admitted his involvement in the sales of January 23 and February 5. He further testified that he had received no money for his participation and also that he complied with David's repeated solicitations out of friendship for David and because he "wanted to get him off my back."

The trial judge instructed the jury on the issue of entrapment and further instructed to the effect that where the defense of entrapment is raised, the State has the burden of proving beyond any reasonable doubt that the defendant was not induced by a state agent to violate the law. If the State fails to prove the defendant was not induced, then in order to convict, the jury would have to find beyond any reasonable doubt that the defendant was ready and willing to commit the crime charged. In other words, it was the defendant's predisposition rather than any inducement which caused the criminal conduct.[4]

---

**3.** See Appendix A.

**4.** The State had conceded in the trial court that there was sufficient evidence of inducement to raise the defense of entrapment and further, that since the issue of entrapment was properly submitted to the jury, the State had the burden of proving beyond any reasonable doubt that the defendant was not entrapped. This concession was made pursuant to language by the Court of Appeals in *State v. Evans,* 278 Md. 197, 362 A.2d 629 (1976), where that court referred to this Court's decision in *Evans v. State,* 28 Md. App. 640, 349 A.2d 300 (1975), and adopted our analysis that:

"[with] any defense theory of justification, excuse or mitigation, including ... entrapment ... a jury instruction ... which cast upon the defendant the burden of persuasion by a preponderance of the evidence ... was constitutionally defective ... since it shifted the burden to the defendant to prove justification or excuse ...." *State v. Evans, supra* at 207.

*See also* Park, *The Entrapment Controversy,* 60 Minn.L.Rev. 163, 262-63 (1971), where the author states:

"modern case law indicates that while the defendant has the burden of production on the issue of inducement, he does not have the burden of persuasion. To raise an issue for the jury, he need only produce, through government witnesses or otherwise, some evidence that government agents induced the offense. He need not persuade the trial judge that the evidence is credible. Nor is he required to persuade the jury. Almost every federal court of appeals that has considered the issue has disapproved jury instruc-

The appellant raises two primary contentions on appeal. I. Appellant's entrapment was established as a matter of law. II. The trial court should not have admitted the quoted testimony of Deputy Bailey.

Inasmuch as we shall reverse appellant's conviction for what we hold to be an error in admitting the quoted testimony of Deputy Bailey, superficially it might appear that the evidentiary issue would be dispositive of the appeal. Nevertheless, we must further determine if entrapment was established as a matter of law, since if entrapment was conclusively proven, the appellant would be entitled to an acquittal; on the other hand, if the evidence merely generated a jury question on the issue of entrapment, the state may retry him on the charges.[5]

I. Was entrapment established as a matter of law?

In Maryland, the "subjective" test, also known as the "origin of interest" test, governs the defense of entrapment. *See Simmons v. State,* 8 Md.App. 355, 259 A.2d 814 (1969). The test was approved by the Court of Appeals in *Grohman v. State,* 258 Md. 552, 267 A.2d 193 (1970), *cert. denied,* 401 U.S. 982, 91 S.Ct. 1204, 28 L.Ed.2d 334 (1971), and reiterated by this Court in *Dravo v. State,* 46 Md.App. 622, 629-30, 420 A.2d 1012 (1980). Under the "subjective" test, the mere affording of an opportunity to commit an offense does not constitute entrapment. Entrapment occurs when a police officer or government agent induces the commission of a crime by one who, except for the government's enticement, solicitation or persuasion, would not have committed the crime. The test requires two inquiries:

tions placing the burden of persuasion upon the defendant on the issue of inducement." (Footnotes omitted.)

*But see, Harford County Education Association v. Board of Education,* 281 Md. 574, 590-91, 380 A.2d 1041 (1977); *Dravo v. State,* 46 Md. App. 622, 626, 420 A.2d 1012 (1980).

5. *Morton v. State,* 284 Md. 526, 397 A.2d 1385 (1979); *State v. Boone,* 284 Md. 1, 393 A.2d 1361 (1978).

"(1) [W]hether there was an inducement on the part of the government officials [or their agents] and if so

(2) [W]hether the defendant showed any predisposition to commit the offense." *Grohman v. State, supra* at 557.

In *Fisher v. State,* 28 Md.App. 243, 250, 345 A.2d 110 (1975), *cert. denied,* 276 Md. 743 (1976), this Court set forth the circumstances in which the offense of entrapment is established as a matter of law:

"The initial test of the evidence, within the framework of the substantive law of entrapment, is always a matter of law for the court. The question to be decided depends upon how the question is raised. A motion for judgment of acquittal based upon that defense requires the court to decide whether there is undisputed evidence, so clear and decisive that reasonable minds, applying the correct law, could not differ in finding that the defendant was induced by the police to commit the offense, and that his criminal conduct was due to the persuasion of the police, and not to his own readiness or predisposition to commit the offense. *Only when such is the state of the evidence is there entrapment as a matter of law.*" (Emphasis added.) (Footnote omitted.)

The appellant contends that the trial judge should have granted the motion for judgment of acquittal and argues that he met both of the requisites for establishing the defense of entrapment as a matter of law. He contends first that he conclusively established that David, a state agent, induced him to commit the offenses, and second, that there was no evidence from which a reasonable jury could conclude that the sales were the result of his own readiness or predisposition rather than the inducement by the police. We disagree and hold that both elements of the entrapment defense were properly submitted to the jury.

We think that the evidence in this case did not establish inducement as a matter of law. Although it was undisputed that on two occasions before the January 23rd sale, then on three to six occasions before the second sale, David requested appellant get him some marijuana from Andrews, reasonable minds could have nonetheless differed as to whether the encounters constituted an inducement. Although David might have been persistent, there was not the degree of harassment, pressure, persuasion, coercion or the irresistible appeals that would be sufficient to establish an inducement as a matter of law.[6] We note, however, that even if an inducement is established as a matter of law, the entrapment defense would not be conclusively established and would still be submitted to the jury if there was sufficient evidence from which the jury could find beyond a reasonable doubt that the criminal conduct resulted not from the inducement but from the defendant's own readiness or predisposition to commit the offense.

With respect to the second requisite to establishing entrapment as a matter of law, we think there was sufficient evidence from which a jury could find beyond any reasonable doubt that appellant's criminal acts resulted not from any inducement, but from his own readiness or predisposition to commit the offense and the State merely afforded appellant the opportunity to do so. Appellant's predisposition might be inferred from the fact that Tommy Andrews referred David to appellant to act as a middleman in any sale.[7] Further, appellant's ready access to and his ability to procure the

---

**6.** See Sherman v. United States, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958), where the Supreme Court found entrapment as a matter of law based, in part, on requests by the informant to the defendant over a period of four months, during which time the informant repeatedly told the defendant that he was suffering and needed drugs. In the instant case, David's importuning was not bolstered by appeals to sympathy, need, etc.

**7.** While appellant objected to David's testimony concerning Andrews' referral on the grounds of hearsay, he does not raise this issue on appeal and it may well be admissible as substantive evidence under the co-conspirator exception to the hearsay rule. See Mason v. State, 18 Md.App. 130, 136-37, 305 A.2d 492 (1973), cert. denied, 269 Md. 763 (1973), cert. denied, 416 U.S. 907, 94 S.Ct. 1612, 40 L.Ed.2d 111 (1974); Irvin v. State, 23 Md.App. 457, 471-73, 328 A.2d 329 (1974), aff'd on other grounds, 276 Md. 168, 344 A.2d 418 (1975).

marijuana from Tommy Andrews on the same day as David's inquiries, coupled with the fact that appellant participated in two separate sales to David could all be considered evidence of appellant's predisposition. Finally, appellant made no claim in his confession that he was an unwilling or reluctant participant in the transactions. For the reasons indicated, the issue of whether the appellant was in fact induced to commit the offense, and if so, whether his conduct was due to the persuasion of the police or to his own readiness or predisposition were properly submitted to the jury.

II. Was the testimony of Deputy Bailey admissible to rebut the entrapment defense?

After determining that entrapment was clearly at issue,[8] the trial judge admitted testimony that "through investigation" Deputy Bailey knew that appellant had been selling marijuana in Talbot County since 1978. The State contends that the testimony was admissible to establish appellant's predisposition to commit the instant offenses.

Neither the State nor the appellant has cited, nor has our research disclosed, any Maryland case dealing with the precise issue of whether hearsay or reputation testimony is admissible on the issue of predisposition when the defense of entrapment is raised.

When an accused relies on the defense of entrapment, the State is entitled to rebut the defense with evidence of the predisposition of the accused to commit the crime. *Sherman v. United States,* 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958); *Simmons v. State,* 8 Md.App. 355, 362, 259 A.2d 814 (1969). By electing to raise the defense of entrapment, a

---

**8.** We note that the testimony of Deputy Bailey concerning the appellant's predisposition was introduced as part of the State's case in chief, rather than in rebuttal. Evidence may be offered to rebut the defense of entrapment, even in the State's case in chief, when it is clear, as in the instant case, that the defense will rely on a claim of entrapment and that the issue will be submitted to the trier of fact. *See United States v. Brown,* 453 F.2d 101 (8th Cir. 1971), *cert. denied,* 405 U.S. 978, 92 S.Ct. 1205, 31 L.Ed.2d 253 (1972); *People v. Mann,* 31 N.Y.2d 253, 288 N.E.2d 595, 336 N.Y.S.2d 633 (1972).

defendant "cannot complain of an appropriate and searching inquiry into his own conduct and predisposition as bearing [on his claim of innocence]." *Sorrells v. United States*, 287 U.S. 435, 451, 53 S.Ct. 210, 77 L.Ed. 413 (1932).

The State may use various permissible methods to rebut an entrapment claim. Among the most common, are proof of prior convictions for similar offenses [9] and evidence of similar criminal acts committed by the accused.[10] In addition, a defendant's ready acquiescence to a police officer's solicitation may itself indicate predisposition, as might the ready access to contraband, the possession of paraphernalia generally associated with criminal activity, or any statements made in the course of the transaction, including displays of expert knowledge and boasts about previous similar criminal activity.

This Court has held evidence of similar criminal acts committed by a defendant admissible to rebut an entrapment defense, even where a defendant has not been convicted of nor even arrested for the other offenses, and even where the similar crimes occurred subsequent to the offense for which the defendant is being tried. *See Berlin v. State*, 12 Md.App. 48, 277 A.2d 468 (1971), *cert. denied*, 263 Md. 710 (1971). *Berlin* involved a defendant on trial for selling a controlled dangerous substance to an undercover state trooper. The defendant claimed entrapment. The State was permitted to cross-examine the defendant about illegal

---

**9.** *See, e.g., United States v. Tyson*, 470 F.2d 381 (D.C. Cir. 1972), *cert. denied*, 410 U.S. 985, 93 S.Ct. 1512, 36 L.Ed.2d 182 (1973); *United States v. Sherman*, 240 F.2d 949 (2nd Cir. 1957), *rev'd on other grounds*, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958); *Carlton v. United States*, 198 F.2d 795 (9th Cir. 1952); *State v. Astorga*, 26 Ariz.App. 133, 546 P.2d 1142 (1976); *Powers v. State*, 380 N.E.2d 598 (Ind.App. 1978); *Commonwealth v. Miller*, 361 Mass. 644, 282 N.E.2d 394 (1972); *State v. Lynard*, 294 N.W.2d 322 (Minn. 1980); *People v. Mann*, 31 N.Y.2d 253, 288 N.E.2d 595, 336 N.Y.S.2d 633 (1972); *State v. DeWolfe*, 402 A.2d 740 (R.I. 1979).

**10.** *Berlin v. State*, 12 Md.App. 48, 277 A.2d 468 (1971), *cert. denied*, 263 Md. 710 (1971). *See also*, Admissibility of Evidence of Other Offenses in Rebuttal of Defense of Entrapment, 61 A.L.R.3d 293 (1975), and cases collected therein. Of course the evidence of other criminal acts may be subject to challenge because of remoteness from the offense charged, the irrelevant nature of the acts, or the unreliability of the evidence. *See United States v. Ambrose*, 483 F.2d 742 (6th Cir. 1973); *DeJong v. United States*, 381 F.2d 725 (9th Cir. 1967).

drug sales which occurred subsequent to the offense charged. This Court held the evidence of subsequent drug sales admissible to prove defendant's predisposition to commit the offense charged. We pointed out that generally where a defendant is charged with the sale of narcotics, it is improper for the State to offer evidence of other unrelated sales. Nevertheless, there is a recognized exception where the defendant claims entrapment. There the State may offer proof of other unrelated narcotics offenses to establish that the sale charged was the result of the defendant's predisposition rather than any inducement by the police.

Although evidence of prior convictions or evidence of similar criminal acts may be admissible to rebut the claim of entrapment, it does not necessarily follow that the similar offenses may be proven by unreliable forms of hearsay or by general reputation. We note that some jurisdictions have permitted hearsay and reputation evidence to establish predisposition. *See United States v. Hawke,* 505 F.2d 817 (10th Cir. 1974), *cert. denied,* 420 U.S. 978, 95 S.Ct. 1404, 43 L.Ed.2d 658 (1975); *State v. Talbot,* 135 N.J.Super. 500, 343 A.2d 777 (1975), *aff'd on other grounds,* 71 N.J. 160, 364 A.2d 9 (1976). *See also,* Cowen, *The Entrapment Doctrine in the Federal Courts, and Some State Court Comparisons,* 49 J.Crim.L.C. & P.S. 447, 450 (1959), where the author notes that hearsay evidence of predisposition offered to rebut an entrapment defense is afforded "a wider range of admissibility than found anywhere else in the law of evidence." *Supra,* at 450. A substantial number of other jurisdictions, including many, like Maryland, which adopt the "subjective" test for entrapment, refuse to permit evidence of reputation or hearsay evidence to establish similar criminal acts. *See, e.g., United States v. McClain,* 531 F.2d 431 (9th Cir. 1976), *cert. denied,* 429 U.S. 835, 97 S.Ct. 102, 50 L.Ed.2d 101 (1976); *United States v. Ambrose,* 483 F.2d 742 (6th Cir. 1973); *United States v. Cantanzaro,* 407 F.2d 998 (3rd Cir. 1969); *Whiting v. United States,* 296 F.2d 512 (1st Cir. 1961); *State v. Cox,* 110 Ariz. 603, 522 P.2d 29 (1974); *Price v. State,* 397 N.E.2d 1043 (Ind.App. 1979); *State v. Jones,* 416 A.2d 676 (R.I. 1980).

In its brief, the State cites, as persuasive authority, several Fifth Circuit decisions which admitted hearsay evidence of prior criminal history and reputation evidence to prove predisposition where the entrapment defense has been raised. It is noteworthy that at about the same time the State's brief was being filed in the instant case, the Fifth Circuit overruled that entire line of cases. In *United States v. Webster*, 649 F.2d 346, 350 (5th Cir. 1981), a majority of the en banc U.S. Court of Appeals for the Fifth Circuit stated:

> "Our creation of a rule that allows gross hearsay evidence to be used to prove predisposition has resulted in the very evils that the rule against hearsay was designed to prevent. The jury is free to believe the unsworn, unverified statements of government informants, sometimes unidentified, whose credibility is not subject to effective testing before the jury and whose motivations may be less than honorable. We are hard pressed to envision a situation where the disparity between the probative value and prejudicial effect of evidence is greater .... [W]e hold that hearsay evidence is never admissible for the purpose of proving the defendant's predisposition. All prior decisions of this Court to the contrary are hereby overruled." [11] (Footnotes omitted.)

According to one commentary, the *Webster* decision brought the Fifth Circuit "into line with all the other federal circuits that have decided the issue. ... The five other circuits that have considered this issue — the First, Third,

---

**11.** The *Webster* majority opinion did indicate a possible exception to the general prohibition and indicated that in "rare circumstances" the government's "good faith, motive, and reasonableness" may assume unusual significance over and above the entrapment defense. Where a defendant asserts that a particular agent had entrapped him due to personal prejudice or personal animosity, in such "rare circumstances" hearsay might be admissible in rebuttal to establish that the agent acted with proper motives in pursuing the defendant. *Webster, supra* at 351.

Sixth, Seventh, and Ninth — have all held that hearsay is not admissible to prove predisposition."[12]

We find no justification for the proposition that where predisposition is in issue, traditional hearsay rules are inapplicable. As Professor Park stated in his excellent analysis of the entrapment defense:

> "The willingness of some courts to admit hearsay in rebuttal of the entrapment defense seems to be a consequence of the disfavored nature of the defense rather than of any belief that the testimony has 'circumstantial guarantees of trustworthiness' equivalent to those of other hearsay exceptions."
> *Park, supra,* 60 Minn.L.Rev. 163, 214 n. 172.

There is no valid reason why the rules of evidence ought to be relaxed or ignored when the appellant raises the defense of entrapment. When other states of mind such as malice are at issue, we do not permit hearsay or reputation evidence. There is nothing unique about the state of mind known as predisposition which would justify dispensing with the reliability assurances afforded by the hearsay rule.

In summary, we hold that suspicion, rumor, secondhand reputation evidence, and other unreliable hearsay normally barred by the rules of evidence do not individually or collectively become admissible merely because the defendant has raised the defense of entrapment.

By asserting the defense, however, the defendant does place predisposition in issue, and prior convictions for similar offenses, prior similar criminal acts, and other probative evidence of state of mind are admissible to assist the trier of fact in determining whether the police ensnared in their net an innocent lamb lured astray, or a predatory wolf pursuing the bait.

> *Judgments reversed; case remanded for new trial.*
> *Costs are not reallocated as part of the judgment of this Court pursuant to Maryland Rule 1082f.*

---

12. 29 Crim.L.Rep. 2385 (1981).

## APPENDIX A

### DEPUTY KENNETH BAILEY

was recalled as a witness, and, having been previously duly sworn by the Clerk of the Court, was examined and testified further as follows:

#### DIRECT EXAMINATION

BY MS. O'CONNOR:

Q  You're still under oath, Deputy Bailey.

A  Yes.

Q  You testified earlier, I believe, that during the course of your investigations you received information about who may be selling different kinds of drugs in Talbot County, and in Easton, is that correct?

A  That's correct.

Q  During the course of your investigations in the last — let's pin it down to the last eighteen months, before February 5, 1980, say from July of 1979, perhaps — no, July of '78 — had you received any information that would indicate that James Bowser was trafficking in drugs at that time?

MR. PULLEN: Your Honor, I'm going to object.

MS. O'CONNOR: He's opened the door.

THE COURT: Yes, you have.

MR. PULLEN: Your Honor, I object, and I don't think I've opened the door, and I think the evidence that's going to come from the witness is going to be pure hearsay, speculation. There's no way I can cross-examine him as to that. I think it's very unfair that that evidence be allowed to come in.

THE COURT: Mrs. O'Connor, in what way has he opened the door?

MS. O'CONNOR: He asked David [deleted] "As far as you know, Jimmy Bowser wasn't selling marijuana on the streets, was he? " And I have somebody who knows that he was.

MR. PULLEN: I'm going to object, your Honor.

THE COURT: Overruled. We'll just have to let some appellate court someday take this up.

BY MS. O'CONNOR:

Q You can answer the question.

A Yes, sir, your Honor, I would say that through investigation I know that Mr. Bowser has been selling drugs since 1978.

Q And is that in Talbot County?

A Talbot County.

Q What kind of drugs, if you know, did your investigations lead to?

A Marijuana.

Q Why wasn't he arrested for any of those charges?

A We were unsuccessful to catch Mr. Bowser.

Q I see. You hadn't had an undercover agent or an informant?

MR. PULLEN: I'm going to object to the whole line of questioning.

THE WITNESS: To buy from Mr. Bowser.

MS. O'CONNOR: Thank you, very much. I have no further questions.

MR. PULLEN: I'm going to renew my objection and ask that the Jury be instructed to disregard those remarks, and ask that they be stricken from the record.

THE COURT: Overruled.

Do you want to cross-examine him on that?

### CROSS-EXAMINATION

BY MR. PULLEN:

Q Deputy Bailey, you get all sorts of information, don't you?

A We get information, yes, sir.

Q And the people who tell you these things are for the most part people in jail, criminals, is that right?

A Not necessarily.

Q Well, for the most part?

A No, sir.

Q Okay. Where do you get your information from?

A Phone calls we receive from people, personal —

Q Anonymous phone calls?

MS. O'CONNOR: I'd like the witness to be permitted to answer the question.

THE WITNESS: Phone calls we receive from people in the neighborhood, phone calls from personal friends, phone calls from the Dover Street Poolroom, people selling drugs in there, there are times names have been given to us.

BY MR. PULLEN:

Q Have you ever had anybody falsely accused?

A No, sir, not really, that I recall, no, sir.

Q Not in your opinion, is that right?

A That's correct. There's a lot of people selling drugs in Talbot County. Mr. Bowser was one of them.

MR. PULLEN: Your Honor, I'm going to object.

THE COURT: All right. That was volunteered. You're correct. Strike that testimony.

MR. PULLEN: Your Honor, can we approach the Bench?

BENCH CONFERENCE

MR. PULLEN: Your Honor, I'm going to request a mistrial at this point. I think that the evidence that has been admitted is pure hearsay, and I think it is —

THE COURT: We think you opened the door, and your motion is denied. Okay.

(End of Bench Conference.)

BY MR. PULLEN:

Q Mr. Bailey, or Deputy Bailey, do you have any records with you today in Court that would indicate any source of any complaint, information, made against Mr. Bowser?

A   No, sir.

Q   Do you have the names and addresses of any persons that we can contact right now and ask them to come in to verify what you said from the witness stand?

A   No, sir, I cannot reveal that person.

Q   Do you have the names and addresses of anybody who has given you information concerning Mr. Bowser's activities?

A   No, sir.

Q   You do not?

A   No addresses.

Q   Do you have the names?

A   I can't reveal that source right now.

MR. PULLEN: Your Honor, I'm going to ask that the witness be directed to answer the question.

THE COURT: Overruled. We're not going to require him to. Go ahead. You have an objection.

BY MR. PULLEN:

Q   You haven't subpoenaed any of those people to the Court to testify here today, have you?

A   I didn't have to subpoena those poeple to Court to testify.

Q   But you can repeat what they told you from the witness stand?

MS. O'CONNOR: Objection. He's arguing with the witness.

THE COURT: He did that because of what you opened up on your last cross-examination. Ask him another question.

MR. PULLEN: Your Honor —

THE COURT: You have your objections.

MR. PULLEN: I have no further questions of this witness.

THE COURT: Anything further?

MS. O'CONNOR: No, sir.

THE COURT: Stand down.

*Bishop, J., concurring:*

Because I agree with the conclusion reached by the majority I concur in this Court's reversal of the judgments against the appellant. It appears clear to me, however, that the prejudicial exchange contained in Appendix A, which took place in the jury's presence, provided a far more compelling reason to remand for a new trial than do the reasons set out in the majority opinion. I especially note the following colloquy:

"THE COURT: Mrs. O'Connor, in what way has he opened the door?

MS. O'CONNOR: He asked David [deleted] 'As far as you know, Jimmy Bowser wasn't selling marijuana on the streets, was he?' And I have somebody who knows that he was.

MR. PULLEN: I'm going to object, your Honor.

THE COURT: Overruled. We'll just have to let some appellate court someday take this up."

That exchange was of such a highly prejudicial nature that the jury having heard it could not thereafter render an impartial verdict. *Dobbs v. State,* 148 Md. 34, 48-49, 129 A. 275 (1925); *Reddy v. Mody,* 39 Md.App. 675, 685, 388 A.2d 555, *cert. denied,* 283 Md. 736-738 (1978). Defense counsel, recognizing the prejudicial nature of the exchange, repeatedly objected and moved for a mistrial. This motion should have been granted because "it can be inferred with a reasonable probability that [the exchange] affected the jury's determination in this case." *Reddy, supra* at 685. I would not have found it necessary to reach the issues upon which the majority based its opinion.