723 A.2d 627 (1999)
318 N.J. Super. 242
STATE of New Jersey, Plaintiff-Respondent,
v.
Anthony NELSON, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted January 26, 1999.
Decided February 11, 1999.
*628 Ivelisse Torres, Public Defender, for defendant-appellant (Abby Schwartz, Assistant Deputy Public Defender, of counsel and on the brief).
Peter Verniero, Attorney General, for plaintiff-respondent (Linda A. Rinaldi, Deputy Attorney General, of counsel and on the brief).
Before Judges MUIR, Jr., KEEFE, and COBURN.
The opinion of the court was delivered by COBURN, J.A.D.
Defendant Anthony Nelson appeals from a judgment of conviction, following a jury verdict, for second-degree robbery, N.J.S.A. 2C:15-1, and third-degree conspiracy to commit theft from the person, N.J.S.A. 2C:5-2; 2C:20-2b(2)(d); and 2C:20-3a. Based on defendant's status as a persistent offender, the judge sentenced him to an aggregate term of sixteen years imprisonment, five years to be served without parole, consecutive to a 1995, fifteen-year sentence defendant was then serving in the State of Georgia. Although the crime occurred in 1990, for reasons unexplained in the record the trial of Nelson did not occur until 1997. We affirm.
Defendant's primary point concerns the admission of a prior inconsistent statement made by his accomplice, William Stallworth, a witness called by the State. The unrecorded statement was given orally to a prosecutor's investigator, in the prosecutor's presence, in 1997 on the day before the witness testified. It was offered by the prosecutor when Stallworth recanted before the jury, claiming that he could not remember whether anyone, including the defendant, participated with him in the robbery. This oral statement, implicating defendant, was essentially the same as a recorded statement, which also came before the jury, made by Stallworth under oath when he pled guilty to the crime in 1991. Although defendant contends that the admission of the 1997 unrecorded oral statement violated N.J.R.E. 803(a)(1) and denied him a fair trial, he does not question the admission in evidence, of Stallworth's 1991 sworn statement.
Defendant also argues that he is entitled to a new trial for the following reasons: the judge wrongly admitted into evidence, as bearing on defendant's credibility, an out-of-state conviction then, but no longer, pending *629 appeal; and the judge erred in denying a mistrial based on a claim of jury misconduct. Last, defendant argues that his sentence was excessive. The sentencing argument is without merit and does not warrant discussion in a written opinion. R. 2:11-3(e)(2).

I.
At approximately 9:45 a.m., on September 14, 1990, Robert Ferretti, a Teamsters Union member, was in the parking lot of Local 676 walking toward the union hall, which is located at the Route 130 Collingswood Circle in Collingswood. He had just returned from the bank, where he had cashed paychecks for co-workers, and was carrying a leather bank bag containing $8,000. Standing near the door was another union member, Marian Harris.
As Ferretti approached the union hall's door, a person, later identified as William Stallworth, the defendant's cousin and accomplice, approached and began to wrestle with Ferretti for possession of the bank bag. They fell to the ground during the struggle and Ferretti suffered cuts, bruises, and a concussion. Another union member came out of the union hall and separated the men. Stallworth, having failed to get control of the bank bag, walked toward the side of the union hall, where he stopped to speak briefly to another man, later identified as defendant Anthony Nelson. They got into a black, four-door Volvo and drove out of the parking lot toward Camden with Nelson in the driver's seat. Marian Harris, who had observed the struggle and the discussion between Stallworth and Nelson from a distance of approximately four feet, noted the first three letters of the license plate tag: "GBU." The police were called immediately.
At 9:51 a.m., Sergeant Robert Rideski received a dispatch reporting the robbery. Within thirty seconds, he arrived at the union hall parking lot and interviewed Harris, obtaining within about a minute her description of the defendants and their car. He immediately broadcast this information over the police radio. About a minute later, Rideski received a radio call from Lieutenant Spoulick, who had spotted the vehicle and was following it in an unmarked car. The defendants were stopped less than a mile from the union hall in the black Volvo, bearing license tag "GBU-98S." Stallworth was in the driver's seat and Nelson was beside him. By 10 a.m., the defendants were under arrest.
About an hour later at police headquarters, Harris positively and unequivocally identified both Stallworth and Nelson. Ferretti was only able to identify Stallworth.
On August 15, 1991, Stallworth entered a guilty plea to the robbery in return for a sentence limitation of imprisonment for five years. He implicated Nelson under oath, and his statement, concededly admissible in this trial, included the following pertinent remarks:
Me and my cousin [Anthony Nelson] were riding past the Teamsters Union and we noticed a truck with a bank bag and that's when my cousin was saying, "Come out." "Let's try to get it." And then we parked. We tried to get it. It was, first he walked over there, trying to get it. He couldn't, so I walked over there to help him and then there was a struggle and the man had fell down. He hit his head on his truck and that's when we left. We had left the scene and we was picked up a few minutes later.
By the time of trial, Harris was no longer able to identify Nelson in court, but she was still positive about her out-of-court identification of him. In addition to Harris, the State's primary witnesses, other than Stallworth, were Ferretti and Sergeant Rideski.
Stallworth admitted his guilt before the jury. His description of his role in the robbery was consistent with the accounts given by Harris and Ferretti, except for his refusal to implicate the defendant. He did not testify that the defendant was not involved. Instead, he claimed he could not recall whether anyone was with him. He also said he could not recall who drove the car away from the robbery. He did say that within a brief time he somehow arrived home. Then, after spending between ten and fifteen minutes inside with Nelson, the two left in the Volvo to visit Stallworth's mother. He acknowledged being followed by the police for "some *630 distance," and he admitted that Nelson was in the car when they were arrested at the Collingswood Circle.
The prosecutor initially responded to Stallworth's claimed memory loss by asking him to refresh his memory by reviewing the 1991 sworn statement. After reading the statement to himself, Stallworth said, "I don't remember saying all that." He indicated that his lack of memory was due to the passage of almost seven years since the robbery occurred. At that point, the prosecutor began to question Stallworth about the 1997 interview. He admitted that the interview occurred but claimed that the statements he made during the interview were the same as his testimony before the jury.
The prosecutor finally reacted to Stallworth's testimony by asking to approach the bench and saying, "Judge, we have an investigator in the office who sat in on the interview who's preparedeven though I haven't spoken to him, he's prepared to testify." (Emphasis added.)
The judge responded by ordering a hearing outside the jury's presence regarding the admissibility of the 1991 and 1997 statements.
Investigator Schuan Ngo testified that he interviewed Stallworth in the presence of another investigator and the trial prosecutor the day before the trial started. He showed Stallworth a copy of his 1991 statement and Stallworth said it was accurate. Ngo described the balance of Stallworth's remarks in the following manner:
A. Okay. He described they were driving, Anthony Nelson was driving the car, and he was in the passenger seat and they saw coming out of the Teamster Union hall, a man carrying a bag and it looked like a money bag and they decided, they talked amongst each other, that they wanted to go get it and they pulled over and they both went over and basically they both leapedjumped on him and he fell down and they ran away. Mr. Nelson drove away from the scene. Mr. Anthony Nelson drove away from the scene while William Stallworth was in the passenger seat and they drove back to Mr. Stallworth's apartment inthe Ferry Station apartment, where he changed clothes and he had got something to eat quickly, and then he drove that car to his mom's house. That's where Collingswood P.D. picked him up.
Defendant testified that on the morning of the robbery he was asleep in Stallworth's house. At 10 a.m., he was awakened by Stallworth. They left in the Volvo about forty-five minutes later. Within moments, the police stopped the car and placed them under arrest.

II.
We will address first the issues arising from the admission of Ngo's testimony. However, before considering the substantive arguments, it is appropriate to note that they must be evaluated under the plain error standard. R. 2:10-2.
When Stallworth recanted, the trial judge, acting without a request from either counsel, ordered a hearing out of the presence of the jury, pursuant to N.J.R.E. 104, on the admissibility of both the 1991 and 1997 statements. He referenced State v. Gross (Anthony), 121 N.J. 1, 577 A.2d 806 (1990), as providing the governing principles. At the conclusion of the hearing, he offered counsel an opportunity to argue.
Neither attorney mentioned that the statement given to Ngo was oral and unrecorded. Nor did they separately analyze the admissibility of each statement. The prosecutor limited his argument to the assertion that Stallworth's claimed lack of memory was feigned. Defense counsel responded in the following manner:
Well, Your Honor, the only thing that I would add in saying that the statement should not be allowed in, is that the answers to the questions given by Mr. Stallworth appear to be consistent with him not really wishing to be here to testify and because hehis responses appear to be those of a refusal to testify, I think that his refusal to testify should be looked into as his position that you know, had it not been for a fact that he was, you know, court ordered to be here and required to be here *631 and went and picked up by the Prosecutor's Office and brought to be here, that he himself, who was in Pennsylvania at the time, would not have voluntarily come in, had he been a resident of Pennsylvania and given a subpoena by a New Jersey court to appear. So, he's here because... not of his own volition.
R. 1:7-2 provides in pertinent part:
For the purpose of reserving questions for review or appeal relating to rulings ... of the court ..., a party, at the time the ruling ... is made or sought, shall make known to the court specifically the action which the party desires the court to take or the party's objection to the action taken and the grounds therefor.

[ (Emphasis added.) ]
An objection to testimony must be supported by the articulation of specific reasons. State v. Melton, 136 N.J.Super. 378, 381, 346 A.2d 424 (App.Div.1975). Moreover, an objection expressed in terms that make no legal sense is unacceptable. Kurak v. A. P. Green Refractories Co., 298 N.J.Super. 304, 328, 689 A.2d 757 (App.Div.), certif. denied, 152 N.J. 10, 702 A.2d 349 (1997). Defense counsel's objection was not stated in understandable legal terms and it has been abandoned on appeal. Now, for the first time, defendant argues that admission of the 1997 statement denied him a fair trial because it was unreliable and inadmissible under N.J.R.E. 803(a)(1). Since the claimed point of error was not articulated to the trial judge, reversal would be appropriate only if the plain error standard has been satisfied.
N.J.R.E. 803 provides in pertinent part:
(a) Prior statements of witnesses. A statement previously made by a person who is a witness at a trial or hearing, provided it would have been admissible if made by the declarant while testifying and the statement:
(1) is inconsistent with the witness' testimony at the trial or hearing and is offered in compliance with Rule 613. However, when the statement is offered by the party calling the witness, it is admissible only if, in addition to the foregoing requirements, it (A) is contained in a sound recording or in a writing made or signed by the witness in circumstances establishing its reliability or (B) was given under oath subject to the penalty of perjury at a trial or other judicial, quasi-judicial, legislative, administrative or grand jury proceeding, or in a deposition.
The State concedes, as it must, that Ngo's testimony was inadmissible under that rule since the statements he described as coming from Stallworth were not in the prescribed form. But on the ground that the trial prosecutor was surprised by Stallworth's recantation, the State now argues that Ngo's testimony was admissible under another rule of evidence, N.J.R.E. 607, which reads as follows:
Except as otherwise provided by Rules 405 and 608, for the purpose of impairing or supporting the credibility of a witness, any party including the party calling the witness may examine the witness and introduce extrinsic evidence relevant to the issue of credibility, except that the party calling a witness may not neutralize the witness' testimony by a prior contradictory statement unless the statement is in a form admissible under Rule 803(a)(1) or the judge finds that the party calling the witness was surprised. A prior consistent statement shall not be admitted to support the credibility of a witness except to rebut an express or implied charge against the witness of recent fabrication or of improper influence or motive and except as otherwise provided by the law of evidence.
In State v. Johnson, 216 N.J.Super. 588, 608-609, 524 A.2d 826 (App.Div.1987), we held that if the prior inconsistent statement of a witness does not meet the reliability requirements of N.J.R.E. 803(a)(1), then N.J. Evid. R. 63(1)(a), it may still be used by the proponent of the witness to "neutralize" his testimony at trial if the trial judge finds that the proponent was surprised. However, as conceded by the State, there are two difficulties with its argument: the judge was not asked to rule on the question of surprise, and the judge failed to instruct the jury that it could only consider the 1997 statement as impairing the credibility of Stallworth's claimed loss of memory.
*632 Our review of the record demonstrates beyond question that the trial prosecutor was surprised when Stallworth recanted. In determining that the prosecutor was surprised, we have chosen to exercise our original jurisdiction under R. 2:10-5, a course we have followed in similar circumstances. State v. Johnson, supra, 216 N.J.Super. at 609, 524 A.2d 826. The day before, Stallworth had expressed his willingness to testify in accordance with his 1991 statement. When called to the stand, Stallworth at first testified without problem. Then, he indicated on a number of occasions that he did not want to testify based on the Fifth Amendment. However, on each occasion, the judge told him he had to testify and Stallworth complied. The idea of memory loss was introduced into the record by the judge on the seventh page of the transcript of Stallworth's testimony when he said:
If you recall the answers, please answer them as truthfully as you can. If you don't recall it, you can tell us you don't recall it if you don't recall it, sir, but you must answer it truthfully.
Shortly after receiving that instruction, Stallworth adopted the tactic of answering the prosecutor's questions by saying that he could not recall. As noted above, when the prosecutor indicated a desire to have Ngo testify, he told the court that he had not yet discussed that possibility with the investigator.
Given the prosecutor's surprise, Ngo's testimony was admissible under N.J.R.E. 607 to neutralize Stallworth's claim that he could not recall who, if anyone, abetted the robbery. We note that under that rule the judge may not be required to determine, as he is under N.J.R.E. 803(a)(1), that the prior inconsistent statement is reliable. See, State v. Caccavale, 58 N.J.Super. 560, 571-72, 157 A.2d 21 (App.Div.1959). Nonetheless, the judge did find both statements reliable, applying the factors dictated by the Court in Gross (Anthony), supra, 121 N.J. at 10, 577 A.2d 806. He also found that Stallworth's claimed memory loss was feigned. Those determinations were amply supported by the record and are entitled to respect on appeal. State v. Gross (Frank L.), 121 N.J. 18, 31, 577 A.2d 814 (1990).
Since a feigned loss of memory is a sufficient foundation for introduction of a prior inconsistent statement under N.J.R.E. 803(a)(1), State v. Brown, 138 N.J. 481, 544, 651 A.2d 19 (1994), overruled on other grounds by, State v. Cooper, 151 N.J. 326, 377, 700 A.2d 306 (1997) (overruling Brown only to the extent it could "be understood to require the jury to be instructed during the guilt phase what the potential sentence is for each noncapital offense"), there is no reason why it should be treated differently under N.J.R.E. 607. Recognition of the admissibility of the 1997 statement puts the issue of prejudice in a different light. The only error was the failure of the judge to provide the appropriate limiting instruction.
Reversal for that reason would only be justified if we were satisfied that the error "was clearly capable of producing an unjust result." State v. Spruell, 121 N.J. 32, 42, 577 A.2d 821 (1990). Unless we have a reasonable doubt as to whether "the error led the jury to a result it otherwise might not have reached," affirmance is required. State v. Macon, 57 N.J. 325, 336, 273 A.2d 1 (1971). We harbor no such doubt for the following reasons.
Stallworth's 1997 statement, as related by Investigator Ngo, essentially tracked Stallworth's 1991 statement. Generally, "[e]vidence that is merely cumulative does not create a reasonable possibility that the verdict would have been affected." State v. Carter, 91 N.J. 86, 114, 449 A.2d 1280 (1982). Furthermore, the evidence of guilt was substantial, if not overwhelming, and the defense was incredible.
The defendant's story was that he did not awaken that morning until 10 a.m. and that he and Stallworth did not leave the latter's house for about forty-five minutes. But the robbery began at approximately 9:45 a.m. An eye witness, standing within four feet of the crime, observed and, about an hour later, identified defendant and his cousin. A police officer arrived within a minute or so of the crime's completion. He immediately received the eye-witness's description of the suspects and their car, including the first *633 three letters of the license plate. Within a minute, another officer, alerted by the first officer's radio transmission, saw the car, followed it briefly, and stopped it less than a mile from the crime scene. With the assistance of other officers, he placed Stallworth and Nelson under arrest. Stallworth's 1991 statement fully corroborated the timing of the events and defendant's participation in the crime. His trial testimony also corroborated the testimony that a police officer followed them in the car for a short distance before the stop.
Considering the time of the criminal event, the time of arrest, and the extremely brief interlude between those occurrences, coupled with Stallworth's 1991 statement, no reasonable jury would have credited defendant's testimony. Moreover, the timing and nature of Stallworth's feigned lack of memory, coming as it did, only after the judge mentioned that subject, was utterly unbelievable. Nor should we lose sight of this fact: the jury was entitled to consider the 1997 statement on the question whether Stallworth was telling the truth when he claimed a memory loss. We do not believe that the lack of an appropriate limiting instruction could have prejudiced defendant since the contents of the statement tracked the earlier statement, which was properly in evidence. See id.
Moreover, when evidence is admitted for one purpose but is not admissible for another purpose, the burden rests on the opposing party to request the limiting instruction. N.J.R.E. 105. Indeed, we have observed that a criminal defendant was in a poor position to argue on appeal about the failure of the trial judge to give a curative instruction when he had not requested one when the error occurred. State v. Childs, 204 N.J.Super. 639, 651, 499 A.2d 1041 (App. Div.1985). When, as here, a limiting instruction should have been given, even though it was not requested, the "failure to do so is not per se plain error...." State v. Allison, 208 N.J.Super. 9, 18, 504 A.2d 1184 (App.Div.) (citing State v. Lair, 62 N.J. 388, 391-92, 301 A.2d 748 (1973)), certif. denied, 102 N.J. 370, 508 A.2d 235 (1985). As noted above, we are satisfied that it was not plain error at all.

III.
Defendant had three prior convictions admitted into evidence to undercut his credibility. One of them, a 1995 conviction from the State of Georgia, was still on appeal at the time of trial. Defendant contends, and the State concedes, the conviction was inadmissible. State v. Biegenwald, 96 N.J. 630, 638-39, 477 A.2d 318 (1984). But the State has submitted, without objection from defendant, documentation from Georgia establishing that defendant's direct appeals have since been concluded against him. Consequently, although there was error, it did not prejudice defendant's right to a fair trial. State v. Talbot, 135 N.J.Super. 500, 511-12, 343 A.2d 777 (App.Div.1975), aff'd, 71 N.J. 160, 364 A.2d 9 (1976) (reviewing only defendant's entrapment argument).

IV.
We next turn to defendant's claim that the judge erred in failing to declare a mistrial based on alleged jury misconduct involving one of the jurors who was an attorney.
When the State rested its case, a juror informed the judge that she had heard the attorney speculating in the jury room about events that had occurred in court and that she did not want to listen to him.
The judge then interviewed the attorney, who indicated that the jurors had been asking questions of him "regularly." He acknowledged speculating about whether Stallworth's plea-agreement statement would be received in evidence and whether it would include facts implicating defendant. He also explained to one or more jurors the legal distinctions between robbery and theft.
The judge dismissed the attorney and then conducted a voir dire of the remaining jurors about their exposure to the attorney's remarks. Each juror was questioned individually while the rest of the panel remained in the jury room. Their responses ranged from indicating they had heard some of the attorney's remarks to indicating that they had heard none. All of the jurors assured the judge that they could forget the attorney's comments and decide the case on the evidence *634 and in accordance with the judge's instructions on the law.
The defendant moved for a mistrial on the ground that the attorney's explanation of the law had tainted the jury. The judge found that the jurors had not been prematurely discussing the facts of the case and that they would be able to disregard the attorney's remarks about the law and decide the case in accordance with the charge. He also found that the attorney's speculation about whether Stallworth's plea-statement would be admitted caused no harm since it was in fact admitted.
The judge's procedural approach to this instance of juror misconduct was correct. State v. McLaughlin, 310 N.J.Super. 242, 257, 708 A.2d 716 (App.Div.), certif. denied, 156 N.J. 381, 718 A.2d 1210 (1998). When a problem of this nature arises
the trial court [must] first determine whether the alleged improper conduct has the capacity to prejudice the defendant. If it does, the court should conduct voir dire, preferably individually and in camera, to determine the extent of juror exposure to the impropriety and whether the affected jurors are capable of deciding the case impartially.
[Id. at 256, 708 A.2d 716.]
The questioning of the jurors was adequate and produced credible assurances from each juror that nothing said by the attorney would adversely affect their ability and willingness to decide the case fairly and in accordance with the law as explained by the judge in his charge. The judge made an objective evaluation of the jurors' abilities to carry out their responsibilities, as required by State v. Scherzer, 301 N.J.Super. 363, 487-88, 694 A.2d 196 (App.Div.), certif. denied, 151 N.J. 466, 700 A.2d 878 (1997). Consequently, defendant's motion for a mistrial was properly denied.
Affirmed.