923 A.2d 286 (2007)
393 N.J. Super. 292
Joyce BARBER and Michael James Barber, Plaintiffs-Respondents,
v.
SHOP-RITE OF ENGLEWOOD & ASSOCIATES, INC. t/a Shop-Rite of Wharton, Defendant-Respondent, and
The Daily Record of Morristown and Newark Morning Ledger Co., Intervenors-Appellants.
Superior Court of New Jersey, Appellate Division.
Argued April 25, 2007.
Decided May 30, 2007.
*288 Thomas J. Cafferty, Lyndhurst, argued the cause for intervenor-appellant, The Daily Record of Morristown (Scarinci & Hollenbeck, attorneys; Mr. Cafferty and Nomi I. Lowy, on the brief).
Donald A. Robinson, Newark, argued the cause for intervenor-appellant, Newark Morning Ledger Co. (Robinson & Livelli, attorneys; Mr. Robinson, Leda Dunn Wettre and Keith J. Miller, on the brief).
Brian P. Fleming argued the cause for respondents, Joyce Barber and Michael Barber (Brunnock & Fleming, attorneys; Mr. Fleming, on the statement in lieu of brief).
Robert Francis Gold, Red Bank, argued the cause for respondent, Shop-Rite of Englewood & Associates (Gold, Albanese & Barletti, attorneys; Christian Bruun, on the statement in lieu of brief).
Before Judges A.A. RODRÍGUEZ, COLLESTER and LYONS.
The opinion of the court was delivered by
LYONS, J.S.C. (temporarily assigned).
Intervenors, Newark Morning Ledger Co. ("The Ledger") and The Daily Record of Morristown ("The Record"), appeal the trial judge's order denying public and press access to a post-verdict jury voir dire to explore possible juror misconduct in this civil case. Because we hold that the First Amendment right of access applies to proceedings of this nature, and that the trial judge's findings were inadequate to support closing the court to the public and press during questioning of the jurors, we reverse.
The following factual and procedural history is relevant to our consideration of the issues advanced on appeal. Plaintiff, Joyce Barber, instituted a suit against defendant, Shop-Rite of Englewood & Associates, Inc., alleging that she was injured as a result of a fall on defendant's property. The matter was tried before a jury, resulting in a verdict for plaintiff in the amount of $876,000. After the trial concluded, State Senator Robert Martin ("Martin"), who is an attorney and law professor, and who had been the jury fore-person, wrote an article for The New Jersey Law Journal on December 4, 2006 in which he described his jury service. In it he said he "was helpful to the jury with legal definitions and with respect to other legal issues." Defendant filed an appeal of the jury's verdict.
On motion of defendant, we remanded the matter to the trial court, ordered that the record be supplemented with Martin's article, and directed the trial judge to conduct proceedings to explore allegations of jury misconduct. See Barber v. Shop-Rite of Englewood, No. A-6311-05T1 (App.Div. January 8, 2007). Thereafter, a motion was made to our court for summary disposition to supplement the record and for instructions regarding the remand hearing. We denied the motion to supplement the record and for summary disposition and ordered that the trial judge determine the procedure and scope of the remand hearing. Thereafter, the trial judge scheduled a hearing at which time Martin was to appear. Another hearing was scheduled for the following day so that the remaining five jurors could testify.
Shortly before the scheduled hearing, The Record and The Ledger newspapers each filed a motion to intervene and to oppose closing the hearing. The motion *289 was considered by the trial judge on short notice. At the conclusion of the oral argument, the trial judge permitted the papers to intervene, but denied the intervenors' access to the hearing.
The trial judge stated that he was vested with broad discretion as to the conduct of the post-verdict jury voir dire and expressed concern about preserving the confidentiality of the jurors' deliberations. The trial judge held that he wished to obtain candid testimony from the jurors in the least coercive atmosphere possible, and that he did not want to have a juror's testimony tainted by reading the testimony of Martin or other jurors before he or she testified. In so holding, the trial judge relied on several cases, including Scott v. Salem County Mem'l Hosp., 116 N.J.Super. 29, 280 A.2d 843 (App.Div.1971), the dissent in United States v. Simone, 14 F.3d 833 (3d Cir.1994), United States v. Ianniello, 866 F.2d 540 (2d Cir.1989), and United States v. Resko, 3 F.3d 684 (3d Cir.1993), which suggest that the preferable manner for conducting jury voir dires in the face of allegations of juror misconduct is to conduct them in camera.[1] Consequently, the trial judge concluded that the hearing would be closed. This emergent appeal ensued.
On appeal, intervenor, The Ledger, presents the following arguments for our consideration:
POINT I
THE FIRST AMENDMENT TO THE U.S. CONSTITUTION PROVIDES A RIGHT OF ACCESS TO POST-VERDICT JUROR VOIR DIRE.
A. "Experience and Logic" compel a finding of access to this proceeding.
1. Experience.
2. Logic.
B. The constitutional right of access is not overcome by any overriding government interest.
1. The trial court did not identify any "overriding interests" justifying closure.
2. The trial court's own statements demonstrate that the closure order is not narrowly tailored.
C. Provisions of a belated transcript [do] not satisfy the First Amendment.
POINT II
PUBLIC ACCESS TO POST-TRIAL HEARINGS ABOUT JUROR MISCONDUCT IS MANDATED BY NEW JERSEY'S CONSTITUTION AND COURT RULES.
In addition, The Record presents the following arguments:
POINT I
THIS COURT SHOULD EXERCISE PLENARY REVIEW OF THE QUESTION OF THE RIGHT OF THE PRESS AND PUBLIC TO ACCESS THIS POST-VERDICT VOIR DIRE PROCEEDINGS.
POINT II
THERE IS A FIRST AMENDMENT AND STATE CONSTITUTIONAL *290 RIGHT OF ACCESS TO CIVIL PROCEEDINGS AND ANY LIMITATION ON THIS CONSTITUTIONALLY PROTECTED RIGHT MUST BE SUPPORTED BY A SHOWING THAT THE DENIAL SERVES AN OVERRIDING GOVERNMENT INTEREST AND THAT THERE IS NO LESS RESTRICTIVE WAY TO SERVE THAT GOVERNMENT INTEREST  THERE HAS BEEN NO SUCH SHOWING IN THIS CASE.
We begin our consideration of these points by reviewing the scope of our review. Generally, the trial judge is vested with broad discretion in evidentiary matters as well as matters affecting the conduct and proceedings in a trial. See State v. E.B., 348 N.J.Super. 336, 344, 791 A.2d 1124 (App.Div.), certif. denied, 174 N.J. 192, 803 A.2d 1163 (2002). For example, N.J.R.E. 403 provides that evidence otherwise admissible may nevertheless be excluded if the judge, in his or her discretion, finds "its probative value is substantially outweighed" by any of the factors in the rule. N.J.R.E. 611 charges the trial judge with broad discretion "over the mode and order of interrogating witnesses and presenting evidence." R. 1:8-6 permits a court, in its discretion, to sequester a jury. State v. Williams holds that the decision to send a jury back for further deliberations after it announces a deadlock is a discretionary one for the trial judge. 39 N.J. 471, 484, 189 A.2d 193, cert. denied, 374 U.S. 855, 83 S.Ct. 1924, 10 L.Ed.2d 1075 (1963). State v. Wolf holds that a decision to read or refuse to read certain testimony to a jury is "discretionary with the trial [judge]." 44 N.J. 176, 185, 207 A.2d 670 (1965). In such instances and others, the appellate scope of review is an abuse of discretion standard. See State v. R.D., 169 N.J. 551, 559-60, 781 A.2d 37 (2001). That is what the trial judge assumed the standard to be. He noted Scherzer, where we recognized that facing a mid-trial allegation of jury misconduct, the trial judge has discretion in the way he or she wishes to investigate the allegations of jury misconduct. Supra, 301 N.J.Super. at 488, 694 A.2d 196.
The existence of broad discretion to deal with allegations of jury misconduct, however, does not mean that there cannot be areas within the realm of jury misconduct issues to which discretion does not extend. Simone, supra, 14 F.3d at 838. The mere existence of discretion does not, without more, mean that discretion is not subject to the First Amendment right of access. Ibid. Indeed, the Supreme Court has held that in the First Amendment context, there is a duty of reviewing courts to engage in an independent factual review of the full record. New York Times Co. v. Sullivan, 376 U.S. 254, 285, 84 S.Ct. 710, 728, 11 L.Ed.2d 686, 709 (1964). Thus, when we address a right of access claim, our scope of review must be substantially broader than an abuse of discretion standard. We are in accord, therefore, with the Third Circuit's holding concerning the scope of review regarding closing a post-verdict jury voir dire to the public and the press. The Third Circuit stated:
This court has plenary review of whether the district court applied the proper legal principles. United States v. Raffoul, 826 F.2d 218, 222 (3d Cir.1987); United States v. Smith, 787 F.2d 111, 113 (3d Cir.1986). With respect to the adequacy of the district court's findings in support of closure and whether the release of the hearing transcript was sufficient to satisfy the First Amendment right of access, this court's scope of review is substantially broader than that for abuse of discretion. "This broader review includes independent consideration of the district court's *291 order and the factual findings inferred from the evidence before it." In re Capital Cities/ABC, Inc., 913 F.2d 89, 92 (3d Cir.1990). See also Smith, 787 F.2d at 113 n. 1 ("In the First Amendment context, reviewing courts have a special obligation that in certain circumstances may require independent review of even factual findings.").
[United States v. Simone, 14 F.3d 833, 837 (3d Cir.1994).]
See also United States v. Antar, 38 F.3d 1348, 1357 (3d Cir.1994); United States v. Smith, 123 F.3d 140, 146 (3d Cir.1997). Consequently, we exercise plenary review over whether the First Amendment, the common law, or Rules of Court create a presumption of access to a civil post-verdict jury voir dire.
R. 1:2-1 provides, "[a]ll trials, hearings of motions and other applications, pre-trial conferences, arraignments, sentencing conferences (except with members of the probation department) and appeals shall be conducted in open court unless otherwise provided by rule or statute." In the case at bar, the parties all concede that no Rule or statute provides that a post-verdict jury voir dire should be closed. However, Comment 2.1.1 to the Rule provides that "[w]hile R. 1:16-1 [providing that only by leave of court granted on good cause shown may a juror be interviewed regarding the case] does not expressly so provide, there is no question that interviews of jurors after the return of a verdict should be conducted in camera." Pressler, Current N.J. Court Rules, comment 2.1.1 on R. 1:2-1 (2007); see also Scott, supra, 116 N.J.Super. at 33, 280 A.2d 843.
In Scott, the trial judge interrogated the jurors post verdict individually in camera concerning claims of misconduct. There, however, we did not opine on whether an in camera proceeding was required. Hence, there is no New Jersey rule, statute or decision specifically addressing public access to a post-verdict jury voir dire where juror misconduct is alleged. For an analytic template to review the question, however, we may look to Simone, which addresses a post-verdict jury voir dire in a federal criminal case. Supra, 14 F.3d at 837.
Simone recognized that the Supreme Court established a two-part inquiry for determining whether a particular proceeding is one to which the First Amendment right of access attaches. Id. at 839. The test requires a court to consider both "experience" and "logic." Ibid. The "experience" prong of the test concerns "whether the place and process have historically been open to the press and general public." Press-Enter. Co. v. Sup. Court of California, 478 U.S. 1, 8, 106 S.Ct. 2735, 2740, 92 L.Ed.2d 1, 10 (1986). The "logic" inquiry concerns "whether public access plays a significant positive role in the functioning of the particular process in question." Ibid.
In Publicker Indus. v. Cohen, the court held that the press possesses a common law right of access to civil trials. 733 F.2d 1059 (3d Cir.1984). Further, Publicker found that "although the right of access to civil trials is not absolute, nevertheless, as a First Amendment right, it is to be accorded the due process protection that other fundamental rights enjoy." Id. at 1070. In noting that the right is not absolute, the Third Circuit held that, "to limit the public's access to civil trials, there must be a showing that the denial serves an important governmental interest and that there is no less restrictive way to serve that governmental interest." Ibid. Given that there is no absolute right of access to a civil trial and that there is no history of reported and sanctioned public access to post-verdict civil jury voir dires concerning *292 juror misconduct, the first prong of the test provides little guidance.
Turning to the "logic" prong of the test, we review whether public access to such a hearing would enhance the functioning of that proceeding. Simone, supra, 14 F.3d at 837, 839. The Third Circuit identified six societal interests that the Supreme Court found were advanced by open court proceedings. Id. at 839; Richmond Newspapers v. Virginia, 448 U.S. 555, 565, 100 S.Ct. 2814, 2821, 65 L.Ed.2d 973, 982 (1980). They are:
[1] promotion of informed discussion of governmental affairs by providing the public with the more complete understanding of the judicial system;
[2] promotion of the public perception of fairness which can be achieved only by permitting full public view of the proceedings;
[3] providing a significant community therapeutic value as an outlet for community concern, hostility and emotion;
[4] serving as a check on corrupt practices by exposing the judicial process to public scrutiny;
[5] enhancement of the performance of all involved; and
[6] discouragement of perjury.
[Simone, supra, 14 F.3d at 839 (citing United States v. Smith, 787 F.2d 111, 114 (3d Cir.1986)) (summarizing United States v. Criden, 675 F.2d 550, 556 (3d Cir.1982)).]
Here, Martin's article apparently was written to promote discussion regarding the jury system. The hearing envisioned would certainly further that discussion. The jury system is the bedrock of our judicial system and understanding its operation and preserving the perception of fairness cannot but be enhanced by a full hearing to explore its operation and correct any misconduct if such is found. Having the public observe the hearing would certainly discourage perjury and provide the public with evidence that juror actions are not unchecked. As stated in United States v. Edwards, "[o]nce the spectre of a tainted jury is raised, public scrutiny of the resolution of the issue is essential." 823 F.2d 111, 116 (5th Cir.1987), cert. denied, 485 U.S. 934, 108 S.Ct. 1109, 99 L.Ed.2d 270 (1988). Consequently, when faced with R. 1:2-1, which, mandates open public court hearings except in limited instances, and where the logic for the hearing is strong and persuasive, we conclude that there is a presumptive right of access.
We note, however, that the presumptive right is not absolute in all cases; the Supreme Court has held that the test for restrictions on the right of access is as follows:
The presumption of openness may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest. The interest is to be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered.
[Press-Enter. v. Sup. Court of California, 464 U.S. 501, 510, 104 S.Ct. 819, 824, 78 L.Ed.2d 629, 638 (1984).]
In the instant case, the trial judge concluded that the presence of the press would create a coercive atmosphere and potentially inhibit the candor of a juror's testimony. In addition, the trial judge was concerned about preserving the confidentiality of the jury's deliberations and that attendant publicity of one juror's testimony in the hearing may effect a subsequent juror's testimony.
We conclude that these well-founded concerns do not constitute overriding governmental interests sufficient to rebut the *293 presumption of openness; there are less restrictive means available to protect juror testimony. We appreciate the trial judge's difficulty in pointing to specific factual support for his conclusions. However, that difficulty may be indicative of the lack of a factual basis for the concern.
In addition, we note that in Publicker, the court held that to overcome the presumption of access, in addition to an overriding interest, any limitation on access must be "narrowly tailored to serve that interest." Supra, 733 F.2d at 1073. Likewise, we have also held that closure of a courtroom can only be effected as a last resort and only after all reasonable alternatives to closure have been explored. State v. Cuccio, 350 N.J.Super. 248, 266, 794 A.2d 880 (App.Div.), certif. denied, 174 N.J. 43, 803 A.2d 638 (2002).
In the instant case, in order to avoid a juror's hearing or seeing any publicity regarding the voir dire, the trial judge may assemble all six jurors and instruct them that they should not read, discuss or listen to anything regarding this matter until otherwise instructed by the court. This form of instruction is commonly given at trials to prevent taint. We are confident that the experienced and astute trial judge will initially question the jurors to ascertain whether there was any misconduct without improperly delving into the jury deliberations. Any further questions by counsel can likewise be reviewed by the court to prevent impermissibly touching on deliberations. We are also confident that the trial judge will conduct the hearing in such a manner as to diminish any coercive atmosphere that may flow from the presence of the press.
Accordingly, we find that there is a presumptive right of access to a civil post-verdict jury voir dire. We also hold that in the instant case, there is no compelling, overriding interest which would rebut the presumption of access and that the well-founded concerns of the trial judge could be adequately addressed through less restrictive alternatives than requiring closure. Accordingly, we reverse the order of the trial judge and remand the matter so that the hearing may be expeditiously conducted.
NOTES
[1] The trial judge also relied upon United States v. Edwards, 823 F.2d 111 (5th Cir. 1987), cert. denied, 485 U.S. 934, 108 S.Ct. 1109, 99 L.Ed.2d 270 (1988); Gov't of Virgin Islands v. Dowling, 814 F.2d 134 (3d Cir. 1987), aff'd, 493 U.S. 342, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990); State v. Scherzer, 301 N.J.Super. 363, 694 A.2d 196 (App.Div.), certif. denied, 151 N.J. 466, 700 A.2d 878 (1997); State v. Bey, 112 N.J. 45, 548 A.2d 846, cert. denied, 522 U.S. 1081, 118 S.Ct. 864, 139 L.Ed.2d 762 (1998); State v. McLaughlin, 310 N.J.Super. 242, 708 A.2d 716 (App.Div.), certif. denied, 156 N.J. 381, 718 A.2d 1210 (1998); State v. Nelson, 318 N.J.Super. 242, 723 A.2d 627 (App.Div.), certif. denied, 158 N.J. 687, 731 A.2d 47 (1999).