**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1619-18T4

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

SHANE STREATER,

    Defendant-Appellant.

_____

Submitted May 11, 2020 – Decided June 30, 2020

Before Judges Messano and Susswein.

On appeal from the Superior Court of New Jersey, Law Division, Camden County, Indictment No. 15-06-0092.

Joseph E. Krakora, Public Defender, attorney for appellant (Daniel V. Gautieri, Assistant Deputy Public Defender, of counsel and on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent (Adam D. Klein, Deputy Attorney General, of counsel and on the briefs).

Appellant filed a pro se supplemental brief.

PER CURIAM

A State grand jury charged defendant Shane Streater, a retired Camden firefighter, with one count of second-degree theft by deception, N.J.S.A. 2C:20-4. The indictment alleged that defendant had "creat[ed] or reinforce[ed] the false impression that … [he] was eligible for an accidental disability pension . . . by making false and deceptive statements about his physical condition[.]" At trial, the jury convicted defendant, concluding by special interrogatory that the amount of the theft was $75,000 or more. The judge sentenced defendant to a seven-year term of imprisonment and ordered $82,488.22 in restitution.

Defendant raises the following issues for our consideration:

> POINT I
>
> THE COURT'S INSTRUCTION ON SECOND-DEGREE THEFT WAS FLAWED BECAUSE IT DID NOT INCLUDE AN EVEN-HANDED DISCUSSION OF THE FACTS, FAILED TO REFLECT THE DEFENSE THEORY THAT [DEFENDANT] ONLY COMMITTED A THIRD-DEGREE THEFT, AND INCORRECTLY SUGGESTED THAT [DEFENDANT] COMMITTED A CRIME WHEN HE FAILED TO INFORM DOCTORS THAT HE MIGHT SEEK A DISABILITY PENSION BASED ON THEIR REPORTS. (NOT RAISED BELOW)
>
> POINT II
>
> THE COURT SHOULD HAVE PROVIDED AN IMMEDIATE LIMITING INSTRUCTION THAT JURORS WERE NOT TO CONSIDER THE PENSION BOARD'S DECISION TERMINATING

[DEFENDANT]'S PENSION OR ITS REFER[R]AL OF THE MATTER TO THE ATTORNEY GENERAL FOR POSSIBLE PROSECUTION IN DETERMINING WHETHER [DEFENDANT] HAD COMMITTED A SECOND-DEGREE THEFT. (NOT RAISED BELOW)

Defendant also filed a pro se supplemental brief. He contends that the amount of the alleged theft failed to consider defendant's pension contributions over the course of his employment. Therefore, any theft could not exceed $29,000, the amount of benefits he received minus his contributions, making this a third-degree crime. He also argues the trial should have been venued elsewhere due to pre-trial publicity. Lastly, defendant asserts criticism of the two attorneys who represented him at various stages of the proceedings.

Having considered these arguments in light of the record and applicable legal standards, we affirm.

I.

We briefly summarize the trial evidence to place defendant's arguments in context.

Defendant applied for an accidental disability retirement pension in 2009, following two on-the-job accidents in 2007 and 2008. N.J.S.A. 43:16A-7, Defendant submitted reports from two doctors, Drs. John Gaffney and Ralph Cataldo, in support of the application, and the Board of Trustees (the Board) of

3

the Police and Firemen's Retirement System (PFRS) had defendant evaluated by a third doctor, Dr. Lawrence Barr.[1] In February 2010, the Board denied defendant's application for an accidental disability pension but awarded him ordinary disability retirement benefits because of the condition of his lumbar and cervical spine, effective June 1, 2009. N.J.S.A. 43:16A-6; see also Russo v. Bd. of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 28 (2011) (explaining differences between accidental and ordinary disability benefits). Defendant began receiving his monthly benefits, which continued through April 1, 2012, and totaled $82,488.42.

In the interim, defendant appealed the Board's denial of his application for accidental disability benefits, and the matter was forwarded to the Office of Administrative Law (OAL) as a contested case. Douglas Smarr, an investigator for the Department of Law and Public Safety's Debt Recovery Section, was assigned to defendant's case. Smarr found that defendant was listed as an instructor at Diamond Mixed Martial Arts gyms in Philadelphia and Egg Harbor Township. The owner of these establishments, Joseph Diamond, testified as a

---

[1] Pursuant to N.J.S.A. 43:16A-8(1), upon receipt of an application for a disability retirement allowance, PFRS shall refer the application to its medical board which shall designate a physician to examine the person and make a report. All three doctors testified as witnesses for the State at the criminal trial, and we discuss relevant portions of their trial testimony below.

defense witness at trial. During a computer search, Smarr found a video of defendant competing at a Grapplers Quest Mixed Martial Arts tournament on June 12, 2010.

Although the exact date is unclear from the record, Dr. Barr reviewed the martial arts competition video and, in a February 2012 supplemental addendum to his earlier reports, the doctor changed his opinion regarding defendant's disability. Dr. Barr wrote that having watched defendant "in active competition in an open fighting match," defendant was "more than capable of working as a firefighter[]" and is "not totally and permanently disabled." On April 9, 2012, the Board viewed the competition video during its meeting; defendant was present. At trial, Smarr testified that defendant told the Board the grappling moves displayed in the video were different from carrying firefighting equipment on his back.

Pension Benefits Specialist Gay Randolph-Prince, who testified at trial as to the procedure involved in applying for a disability pension, also detailed for the jury what occurred after the Board's meeting. She read extensively from the Board's April 11, 2012 letter that revoked defendant's disability pension, including the Board's findings that defendant was not "totally and permanent[ly] disabled from the performance of his regular and assigned duties, as detailed by

5

. . . N.J.S.A. 43:16A-7[,]" and "suffers no neck and back disability."[2] Randolph-Prince also read that portion of the Board's letter that reflected its vote to refer the matter to the Attorney General's Office, Division of Criminal Justice Fraud Unit "to determine if [defendant] has committed pension fraud."

The jury also heard a portion of defendant's testimony before the administrative law judge in the OAL appeal. Defendant acknowledged never telling any of the doctors that he was actively engaged in mixed martial arts, or that he was instructing jiu jitsu. Defendant admitted he did not reveal this because he "didn't feel it was necessary[,]" as he "wasn't doing anything that [he] thought was detrimental to [his] injury."

Defendant's opponent in the competition video, Daniel Boyle, testified before the jury. He narrated the various moves displayed on the video and described his training routine before a competition. According to Boyle, the Advanced Absolute division, in which he and defendant competed, required a greater skill level and permitted the use of maneuvers that were too dangerous for lesser skill levels.

---

[2] We note that pursuant to N.J.S.A. 43:16A-8(2), PFRS may compel a medical reexamination of any beneficiary of a disability retirement allowance "to determine whether or not the disability . . . has vanished or has materially diminished[,]" such that the person can perform his "former duty or any other available duty[.]" If so, the applicant "shall report for duty[.]"

Dr. Gaffney testified about his prior examinations of defendant and opinions regarding defendant's neck and back injuries. The doctor viewed the competition video and concluded defendant's performance in 2010 was "obviously inconsistent" with the limitations and pain that defendant claimed he was experiencing in 2009 and 2011. Dr. Cataldo testified regarding his evaluation of defendant in 2010. After watching defendant's competition video in court, the doctor had no doubt defendant's performance was "inconsistent" with his reports regarding level of pain and physical limitations at the time of the examination. Dr. Barr also testified about his evaluation of defendant. He said that if he had known about defendant's ability to carry out the activities seen on the video; he would not have opined that defendant was disabled.

Defendant did not testify, but Diamond testified that defendant trained and taught at the gym before he was injured. Although defendant was listed as an instructor on the gym's website, Diamond said that was "for marketing," as defendant "wasn't actually working [at the gym] at the time[.]" Defendant obtained his black belt in Brazilian jiu jitsu in 2010, after what Diamond testified was a "verbal test." Diamond was shocked to learn defendant had entered the 2010 competition because such activities were inconsistent with what defendant said about his physical limitations. On cross-examination, Diamond read for the

7

jury his gym's newsletter from 2009, which stated defendant and another person were excellent instructors "who between them lost four jiu-jitsu matches all of last year," and that defendant won a bronze medal in a Grapplers Quest jiu jitsu competition in 2008.

## II.

In his second point, defendant argues Randolph-Prince's testimony about the Board's decision to revoke defendant's pension because he was not disabled and refer the matter to the Attorney General was improper because it implied the Board had already decided defendant committed fraud. Defendant recognizes there was no objection to the testimony, but, he nevertheless contends that the judge should have sua sponte provided a limiting instruction, advising jurors that the Board's decision was, like an indictment, "a step in the procedure to bring the matter before the court[.]" See, e.g., Model Jury Charges (Criminal), "Preliminary Instructions to the Jury" at 3 (rev. May 12, 2014).

The State counters defendant's argument at its premise, arguing that the Board merely found defendant was not disabled and was ineligible for a disability retirement pension, but not that he had been deceptive. It further contends that evidence of the Board's referral to the Attorney General's Office

was no different than testimony that a citizen made a complaint to her local police department.

Defendant does not claim the admission of the evidence was itself plain error that requires reversal, i.e., error that was clearly capable of bringing about an unjust result.  R. 2:10-2.  We agree with the State that telling the jury the Board determined defendant was ineligible for a disability pension because he was not disabled did not supplant the jury's overriding obligation to determine if defendant obtained the benefits through deceit.  See N.J.S.A. 43:16A-8(2) (recognizing PFRS' ability to compel reexamination to determine whether disability continues).  Moreover, we note without deciding its application here, that upon proper notice and an opportunity to be heard, N.J.R.E. 201(a) specifically permits the court to take judicial notice of "determinations of all governmental subdivisions and agencies[.]"

Testimony about the Board's referral to the Division of Criminal Justice Fraud Unit is more troubling.  We disagree with the State's analogy that the evidence was no more offending than if a witness testified she called the police, because the Board, which is responsible for administration of the pension funds, specifically referred the matter for a fraud determination.  However, we have no doubt based on the court's instructions at the end of the case that the jury fully

9

understood it alone would decide whether defendant deceived the Board with the necessary purposeful intent to obtain benefits. See Model Jury Charges (Criminal), "Theft by Deception (N.J.S.A. 2C:20-4)" (rev. April 15, 2013). If it was error to permit Randolph-Prince to read that portion of the letter, it was harmless at best.

In any event, because there was no objection at trial, the judge was never given the opportunity to address the issue contemporaneously by providing a limiting or curative instruction. The burden in the first instance lay with defendant to request such a charge. State v. Nelson, 318 N.J. Super. 242, 254 (App. Div. 1999). When a defendant fails to request such an instruction at trial, even if one should have been given, we must determine if the failure constitutes plain error. See, e.g., State v. Montesano, 298 N.J. Super. 597, 617 (App. Div. 1997) (applying plain error standard to review of judge's failure to sua sponte give limiting instruction).

Here, the State adduced abundant evidence of defendant's fraud, including the testimony of three doctors who examined him and stated defendant's actions on the videotape of his martial arts competition were inconsistent with defendant's complaints of pain and disability. The judge's final instructions focused the jury's attention on its responsibility to decide the facts of the case.

We are convinced any failure to provide an immediate instruction limiting the jury's consideration of testimony about the Board's referral of defendant's conduct for criminal investigation was not clearly capable of bring about an unjust result.  R. 2:10-2.

In his first point, defendant essentially claims that judge failed to "tailor[]" the final jury instructions to the facts of the case, and that he emphasized the State's factual contentions but gave no equal explanation to defendant's. Defendant asserts that the doctors acknowledged there was objective evidence of injury to his spine when they examined him, and the jury could have accepted that defendant's only deception was in failing to notify the Board of his rapid improvement.  Defendant argues the judge's failure to tailor the charge to the facts of the case impaired the jury's fair consideration of theft of a lesser amount of benefits, and thereby, prohibited a finding of third-degree theft.  We disagree with these contentions.

There was no objection to the charge as given at trial.  "We review for plain error the trial court's obligation to sua sponte deliver a jury instruction when a defendant does not request it and fails to object at trial to its omission." State v. Alexander, 233 N.J. 132, 141–142 (2018) (citing State v. Cole, 229 N.J. 430, 455 (2017)).  The Court has said that

> [i]n the context of a jury charge, plain error requires demonstration of "[l]egal impropriety in the charge prejudicially affecting the substantial rights of the defendant sufficiently grievous to justify notice by the reviewing court and to convince the court <u>that of itself the error possessed a clear capacity to bring about an unjust result</u>."
>
> [<u>State v. Burns</u>, 192 N.J. 312, 341 (2007) (second alteration in original) (emphasis added) (quoting <u>State v. Jordan</u>, 147 N.J. 409, 422 (1997)).]

We assess the allegation of error in light of "the totality of the entire charge, not in isolation." <u>State v. Chapland</u>, 187 N.J. 275, 289 (2006) (citing <u>State v. DiFrisco</u>, 137 N.J. 434, 491 (1994)). While an erroneous jury charge may be a "'poor candidate[] for rehabilitation' under the plain error theory[,]" <u>Jordan</u>, 147 N.J. at 422–23 (quoting <u>State v. Simon</u>, 79 N.J. 191, 206 (1979)), we nonetheless consider the effect of any error in light "of the overall strength of the State's case." <u>Chapland</u>, 187 N.J. at 289.

We acknowledge the Court's advice to trial judges that rather than routinely reading the model charges to the jury, "the better practice" is for the judge "to mold the instruction in a manner that explains the law to the jury in the context of the material facts of the case." <u>State v. Concepcion</u>, 111 N.J. 373, 379 (1988). The Court made clear that "[i]ncorporating specific evidentiary facts into a jury charge is especially helpful in a protracted trial with conflicting

testimony[,]" id. at 380 (citing State v. Parker, 33 N.J. 79, 94 (1960)), or "when an instruction modeled solely on the language of an applicable statute or rule of law will not adequately guide the jury's deliberations." State v. Reddish, 181 N.J. 553, 612 (2004) (citing State v. Olivio, 123 N.J. 550, 567–68 (1991)). "However, there is no principle requiring that in every case a court must deliver a specifically tailored instruction relating the facts of the case to the applicable law." State v. T.C., 347 N.J. Super. 219, 240 (App. Div. 2002).

Initially, we disagree with defendant's assertion that the judge's charge was unbalanced and favored the State's evidence, particularly in the judge's recounting of the testimony of Dr. Cataldo, who did not know defendant was submitting his evaluation done for purposes of a workers' compensation claim to the Board. However, a fair reading of the entire charge reveals that the judge was setting forth the nature of the State's contentions and the evidence that it alleged supported defendant's conviction.

Defendant claims the judge failed to state with equal detail or conviction the asserted defense and the evidence that supported that. He argues that the judge failed to focus the jury's consideration of his claim that he had recuperated sufficiently from his disability to participate in the martial arts contest, and,

hence, if there was any deception it was for a lesser period of time than the State alleged and for a lesser amount of money.

We have carefully read the record, with focus on defense counsel's opening and closing statements. She told the jury in her opening statement that "this case is a relatively simple issue and that issue is, did the defendant deliberately mislead or deceive his doctors?" She asked the jury to critically evaluate the doctors' testimonies, because they were looking "backwards," having now seen the video, even though at the time of their examinations, they all agreed defendant had objective indicia of disabling injury. In her summation, defense counsel reprised this theme, arguing defendant never deceived his doctors at the time of examination, telling the jury, "You can't say based on something [defendant] did in 2010 that he must have been lying in 2009." In short, defense counsel never suggested that defendant's theft was limited to only a period of the total time charged in the indictment, because his deception only began at some point after 2009.

This was not a protracted trial, with competing versions of the facts. There were no complex legal issues to explain to the jury. The model jury charge used by the judge adequately focused the jury's attention on the appropriate factual

determinations it needed to make. The judge committed no error, much less plain error, in his final instructions.

III.

The arguments raised in defendant's pro se submission require only brief discussion. R. 2:11-3(e)(2). We discern the first point is an attack on the sufficiency of the State's evidence at trial, at least as to the amount of the theft. However,

> the present, well-established standard for determining the sufficiency of the evidence . . . requires the trial court to determine "whether, viewing the State's evidence in its entirety . . . and giving the State the benefit of all its favorable testimony as well as all of the favorable inferences which reasonably could be drawn therefrom, a reasonable jury could find guilt . . . beyond a reasonable doubt."
>
> [State v. Wilder, 193 N.J. 398, 406 (2008) (quoting State v. Reyes, 50 N.J. 454, 458–59 (1967)).]

We review the decision of the trial judge de novo applying the same standard. State v. Bunch, 180 N.J. 534, 549 (2004).

The record clearly demonstrates the State adduced evidence that, if believed by the jury, proved defendant received more than $75,000 in pension benefits through deception. Defendant never argued at trial that his pension

15

contributions, which he claims were frozen until he made restitution, were legal offsets to the theft amount.

Defendant never moved for a change of venue in the trial court, and we refuse to consider the issue for the first time on appeal. See, e.g., State v. Witt, 223 N.J. 409, 419 (2015) (noting "with few exceptions, 'our appellate courts will decline to consider questions or issues not properly presented to the trial court when an opportunity for such a presentation is available[]'" (quoting State v. Robinson, 200 N.J. 1, 20 (2009))).

Lastly, we preserve for post-conviction relief defendant's claims about the alleged ineffectiveness of trial counsel. See, e.g., State v. Hess, 207 N.J. 123, 145 (2011) ("[W]e routinely decline to entertain ineffective-assistance-of-counsel claims on direct appeal because those claims 'involve allegations and evidence that lie outside the trial record.'" (quoting State v. Preciose, 129 N.J. 451, 460 (1992))).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1619-18T4